THE STATE ex rel. NATIONAL LIFE INSURANCE COMPANY OF MONTPELIER v. BEN C. HYDE, Superintendent of Insurance Department of State of Missouri, and L. D. THOMPSON, State Treasurer of State of Missouri.

In Banc, March 11, 1922.

1. FOREIGN LIFE INSURANCE COMPANIES: Taxing Statute: Premiums Received. Under Section 6387, Revised Statutes 1919, a foreign life insurance company doing business in this State is only required to pay tax upon the net amount of "premiums received" in this State; that is, the amount of the contractual premiums less credits thereon due to the application of so-called dividends.

2. ———: ———: Strict Construction. The rule that taxing statutes are to be strictly construed in favor of the taxpayer applies to Section 6387, Revised Statutes 1919, taxing foreign insurance companies.

3. ———: ———: Departmental Construction. The rule that a construction of a statute adopted and for years adhered to by a department of the government charged with its enforcement should be given great weight by the courts when called upon to construe such statute, is in force in this State. But such rule can only be invoked where the language of the statute is ambiguous or doubtful.

4. ———: ———: Case Adjudged. Relator is a foreign mutual life insurance company, having no capital stock, and has for a number of years been licensed to do a life insurance business in this State. The policies issued by it are what is known as participating annual dividend plan of life insurance. The contractual nominal premiums on such policies are based on an assumed or expected mortality, an estimated expense of operation and an assumed or expected rate of interest earnings on its funds. Savings out of the contractual premiums and from actual expenses incurred proving less than those anticipated and from interest earn-

State ex rel. Nat. Life Ins. Co. v. Hyde.

ings on its funds in excess of those anticipated in the calculation of the premiums, become what is termed "surplus" and are apportioned to policyholders annually by means of what are known as "dividends." The policies provide for participation in this surplus, and that the company shall annually determine and account for the portion of the divisible surplus accruing thereon, and that dividends when declared shall become absolutely the property of the insured and at his option may be (1) paid in cash, (2) applied toward any premium or premiums, (3) converted into additional participating insurance, or (4) deposited with the company subject to the payment annually of three per cent interest thereon, together with the sl are of the surplus interest apportioned on account of said policy by the directors of the company. Policyholders in this State elected to apply their dividends toward the premiums on their policies, and paid relator in cash or notes the balance of such premiums. *Held*, relator was only taxable on the amounts so received, and not on the full contractual premiums provided for by such policies.

*Held*, by WALKER, J., dissenting, that as the company transfers the dividend, held by it in trust for the policyholder and owned by him, to its own treasury and retains it as a part of the fund arising from the payment of premiums, the words "premiums received," upon which by the terms of the statute the company must pay taxes, include said dividend, and the company should pay taxes on the entire amount of premiums received unreduced by dividends.

5. ———: ———: **Mandamus.** Mandamus is the proper remedy to compel the Superintendent of the Insurance Department to certify to the State Auditor the amount of tax due from a foreign life insurance company under Section 6387, Revised Statutes 1919, determined according to the correct construction of such section, and to compel the State Treasurer to receive and accept such amount in payment of such taxes.

## Mandamus.

PEREMPTORY WRIT GRANTED.

*Jones, Hocker, Sullivan & Angert* for relator; *George B. Young* of counsel.

(1) A taxing statute is to be strictly construed. In re Estate of Clark, 270 Mo. 362; Gould v. Gould, 245 U. S. 153. (2) A statute should not be construed so as to

344          SUPREME COURT OF MISSOURI,

State ex rel. Nat. Life Ins. Co. v. Hyde.

produce an unjust result or one contrary to its own manifest intention. Darlington Lumber Co. v. Railroad, 216 Mo. 672; State ex rel. Tuller v. Seehorn, 246 Mo. 577. (3) A tax upon "premiums received" means premiums which are actually received, "dividends," or the return to the policyholder of over-payments of prior premiums, as a credit in reduction of subsequent premiums, are to be deducted from the gross or contractual premiums in arriving at the amount upon which such tax is to be assessed. State v. Wilson, 102 Kan. 503, 172 Pac. 41; Mutual Benefit Life Ins. Co. v. Commonwealth, 107 S. W. 802; Commonwealth v. Ins. Co., 252 Pa. 512; Commonwealth v. Metropolitan Life Ins. Co., 254 Pa. 510; Mutual Benefit Life Ins. Co. v. Herold, 198 Fed. 199, 201 Fed. 918; Ins. Co. v. Lederer, 252 U. S. 521; Commonwealth v. Penn. Mutual Life Ins. Co., 1 Dauphin, 233 (Pa.); New York Life Ins. Co. v. Chaves, 21 N. M. 264; State v. Ins. Co., 38 La. Ann. 465. (4) Mandamus is the proper remedy to compel public officials to accept the correct amount in settlement of a tax. State ex rel. Flaugh v. Jaudon, 227 S. W. 48; Wahl v. Speer, 223 S. W. 655; State ex rel. v. School Board, 131 Mo. 505; State ex rel. Houser v. Oliver, 116 Mo. 188; State ex rel. Clark v. West, 272 Mo. 314.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for respondents.

(1) The dividends, having been declared, become the absolute property of the policyholders, even though they remain in the custody of the insurer. The insurer no longer holds such dividends as the owner thereof, but as the agent of the insured. The legal effect is precisely the same as if the dividends were turned over to the physical possession of the policyholders. When the policyholders direct the custodian of their funds as represented by the dividends to turn them over to the insurer in part payment of premiums due, the insurer again becomes the owner of such funds and has in legal effect and

actually received them from the insured. People ex rel. Ins. Co. v. State Treasurer, 31 Mich. 6; Insurance Co. v. State, 116 N. E. 579. (2) The dividend is a return of a part of a premium paid. It is not an abatement of a part of a premium due. But the statute lays the tax upon the gross premiums received without allowing any deduction for premiums or parts of premiums returned. Mass. Bond & Ins. Co. v. Chorn, 274 Mo. 30. (3) For forty years the Insurance Department has construed the words "premiums received" as including dividends applied in payment of premiums. This departmental construction is persuasive as to the true meaning of the phrase. State ex rel. v. Gordon, 266 Mo. 394, 412.

DAVID E. BLAIR, J.—This is an original proceeding in mandamus in which Alfred L. Harty, then Superintendent of the Insurance Department of this State, was named as one of the respondents. Upon his retirement from that office his successor, Ben C. Hyde, was substituted as a party respondent. Relator is seeking to compel the Superintendent of the Insurance Department to certify to the State Auditor that the tax due, owing and payable by relator on premiums received by relator during the year 1920 in the State of Missouri and on business done in this State, is $7,368.14, and to compel respondent L. D. Thompson as State Treasurer to receive and accept from the relator the said sum in payment and discharge of said tax.

In response to our alternative writ of mandamus, respondents filed their amended return. Relator has filed motion for judgment on the averments of the alternative writ, admitted to be true in said amended return of the respondents.

The undisputed facts in the case, as gleaned from the alternative writ and the return of respondents, are as follows: Relator, the National Life Insurance Company of Montpelier, Vermont, is a corporation of that state, organized as a mutual life insurance company, having no capital stock or stockholders and engaged in the busi-

ness of writing life insurance. Said relator has for a number of years been duly authorized and licensed to do a life insurance business in this State. Alfred L. Harty, was, and respondent Ben C. Hyde now is, Superintendent of the Insurance Department of the State of Missouri, and respondent L. D. Thompson is and was the State Treasurer of this State. The policies of insurance issued by relator are what is known as participating, annual dividend plan of life insurance. The contractual, nominal premiums on such policies are based on an assumed or expected mortality, an estimated expense of operation and an assumed or expected rate of interest earnings on the funds of relator. Savings out of the contractual premiums and from actual expenses incurred proving less than those anticipated and from interest earnings on the funds of relator, in excess of those anticipated in the calculation of the premium, become what is termed "surplus" and are apportioned to policyholders annually by means of what are known as "dividends."

The provisions of the policies issued by relator respecting the surplus are as set out in the alternative writ of mandamus, to-wit: That such policies shall participate in the surplus of the company and the company will annually determine and account for the portion of the divisible surplus accruing thereon and that dividends when declared shall become absolutely the property of the insured and at his option may be, first, paid in cash; second, applied toward any premium or premiums; third, converted into additional participating insurance, or, fourth, deposited with the company, subject to the payment annually of three per cent interest thereon, together with the share of the surplus interest apportioned on account of said policy by the directors of the company. The contractual or stipulated premiums payable during the year ending December 31, 1920, on all policies issued by the relator in this State and in force during all or any part of that year aggregated $417,325.54, and no more. During said year relator declared so-called dividends aggregating $48,918.06, which various Missouri

policyholders elected to have applied toward the payment of premiums due on their respective policies during 1920, and which were so applied by relator during said year. The collections by relator on account of such premiums during the year 1920 of said Missouri policies were as follows: By cash or note, $368,407.48; by dividends applied as above stated, $48,918.06, making up the above aggregate sum of $417,325.54.

On and prior to March 1, 1921, as required by Section 6388, Revised Statutes, 1919, relator made its return to the Insurance Department of this State of premiums on policies in this State during the year 1920 and such return showed the gross contractual premiums for said year to be said sum of $417,325.54, and relator claimed a reduction of said gross contractual premiums by dividends amounting to said sum of $48,918.06, and relator claimed that it had actually received as premiums during said year and on such insurance policies only the sum of $368,407.48.

Relator demanded that the Superintendent of the Insurance Department certify to the State Auditor and the State Treasurer that relator owed as said tax the sum of $7,368.14, and said Superintendent of Insurance refused and still refuses so to certify the amount of said tax as said sum. Said Superintendent of Insurance did certify that relator owed a tax of $8,346.51, that sum being two per cent upon said sum of $417,325.54, and this amount has been demanded of relator as the proper tax due from it under penalty of the suspension of the license of relator to do business in this State unless such payment be made.

Said respondent L. D. Thompson as State Treasurer has refused to receive said sum of $7,368.14 in payment of said tax, and unless ordered by this court to refrain from so doing will certify to the Superintendent of the Insurance Department that relator is delinquent, and said Insurance Department will suspend relator from the further transaction of business in this State because of its failure to pay said tax.

Respondents make certain denials in their return to the alternative writ of mandamus, which amount only to denials of legal conclusions from the facts actually admitted. Such denials may be summarized as follows: That the Missouri policyholders of relators have elected to have said dividends applied in payment and reduction of their respective premiums, payable in and during 1920, in any other sense than that they elected to have their dividends applied in payment of their premiums as aforesaid; that relator received premiums on policies in force in this State aggregating $368,407.48, and that the amount of the tax due and payable under Section 6387, Revised Statutes 1919, is two per cent upon the sum of $368,407.48, and no more. Relator also denies that it is the duty of the Superintendent of the Insurance Department to certify to the State Auditor and to the State Treasurer that all the tax relator is required to pay is the said sum of $7,368.14.

The section of the statute under which provision is made for the payment of the above tax is Section 6387, Revised Statutes 1919, and reads as follows:

"Every insurance company or association, not organized under the laws of this State, shall, as hereinafter provided, annually pay tax upon the premiums received, whether in cash or in notes, in this State, or on account of business done in this State, for insurance of life, property or interest in this State at a rate of two per cent per annum in lieu of all other taxes, except as in this article otherwise provided, which amount of taxes shall be assessed and collected as hereinafter provided: Provided, that fire insurance companies shall be credited with canceled or return premiums, actually paid during the year in this State, and with premiums on reinsurance with companies, authorized and licensed to transact business in Missouri, which reinsurance shall be reported by the company reinsuring such business; but no credit shall be allowed any fire insurance company for reinsurance in companies not licensed to transact business in Missouri."

I.   The facts are undisputed.  The only question for determination is the proper construction to be given the words "premiums received," as found in said Section 6387.  The precise question has never been decided by this court.   There are, however, several cases from other jurisdictions wherein similar statutes containing almost the exact words of our own have been construed.

"Premiums Received:" Deducting Dividends.

In the case of State ex rel. v. Wilson, 102 Kan. 752, 172 Pac. 41, the Supreme Court of Kansas construed a very similar provision of the statute of that state and held that the words "premiums received" meant the net premium paid the insurance company after crediting the so-called dividend upon the amount of the contractual premium.  The Kansas statute, being Section 5467 of the General Statutes of 1915, reads as follows:

"Every insurance, guaranty and accident company or association not organized under the laws of this State shall, as hereinafter provided, annually pay a state tax upon all premiums received, whether in cash or in notes, in this State, or on account of business done in this State, for insurance of life, property or interests in this State, or guaranty companies, at the rate of two per cent per annum, which amount of tax shall be assessed by the superintendent of the insurance department, as hereinafter provided."

After citing a large number of decisions from the several State and Federal Courts and reciting that "with almost an entire unanimity the courts which have had occasion to consider this question have determined that the tax only reaches the sum retained and kept for the company's business and does not apply to such portion of the sum as is returned to the policyholder or abated to his account," the conclusion of the court was announced as follows:

"The court holds that such moneys not actually devoted as premiums to the business of the insurance company for the current year in which they are collected, but which are returned or otherwise abated or credited

to the policyholders' account, are not subject to the two per cent tax enacted upon premiums received during the year.''

In Mutual Benefit Life Insurance Company v. Commonwealth, 107 S. W. 802, a statute of the State of Kentucky quite similar to our own statute was construed by the Court of Appeals of that state. That portion of the statute (Sec. 4227) with which we are concerned, reads as follows: ''Every life insurance company . . . shall . . . pay into the State Treasury a tax of two dollars upon each one hundred dollars of said premiums'' (that is, all renewal premiums received in cash or otherwise). It was held that the two per cent tax on the renewal premiums received could only be collected upon the portion of the contractual premium settled in cash or notes after the so-called dividends had been credited.

A similar ruling was made in Pennsylvania, as reported in the case of Commonwealth v. Penn. Mutual Life Insurance Company, 252 Pa. 512. We quote from the syllabus:

''In computing the amount of gross premiums received by a life insurance company in respect of which the insurance company is taxable under the Act of June 1, 1889, P. L. 420, dividends payable to the insured and actually credited upon the premiums payable by them respectively are properly deducted.''

So much of the statute as is necessary to an understanding of that case is as follows: ''Every such company shall pay . . . a tax of eight mills upon the dollar upon the *gross amount* of said *premiums* . . . *received*,'' etc. (Italics ours). The conclusion of the court was announced as follows:

''We are satisfied that the deduction made from the maximum premiums as hereinbefore stated were never received by the defendant company either in money, notes, credits or otherwise, and that with respect to these sums the defendant company is not liable to the eight mill tax.''

The same question was under consideration in Commonwealth v. Metropolitan Life Insurance Company, 254 Pa. 510. The tax was imposed by the statute upon the entire amount of premiums received in money, notes, credits or other substitutes for money. It was held that the statute did not impose any tax upon the allowances and allotments to policyholders in reduction of their premiums, and that for the purposes of said taxing statute such allowances and allotments when applied to the payment of the premium named in the policy were not *received* by the insurance company at all.

We will not unnecessarily lengthen this opinion by quoting or discussing the reasoning of the several courts by which the respective conclusions above set out were reached. The curious may peruse the cases in their entirety. The reasoning by which the conclusions were reached in these cases appeals to us as entirely sound. Relator cites and quotes in its brief from a number of other cases. The cases from which we have quoted also cite numerous supporting authorities. We have examined all of these carefully. In some of them, like New York Life Insurance Company v. Chaves, 21 N. M. 264, and State v. Hibernia Insurance Company, 38 La. Ann. 465, the statute providing for a tax on premiums received expressly excepted return premiums or so-called dividends. These cases are therefore of little value, except as evidence of an expression of the legislative policy in harmony with the construction of similar statutes in the cases above referred to where such exception was not explicitly made in the statute. We are also cited to a number of Federal decisions where rulings were made exempting such dividends or allowances in computing the taxable income of insurance companies. These are illustrative of the taxing policy of the government in harmony with the construction contended for by relator, but they are not strictly in point.

Respondents rely mainly upon People ex rel. Ins. Co. v. State Treasurer, 31 Mich. 6, and Metropolitan Life Ins. Co. v. State, 116 N. E. (Ind.) 579. The Michigan

case seems to hold squarely that the tax must be based upon the contractual premium or upon the cash actually paid by the insured, plus the credit due him from the insurance company because of a dividend or overpayment the previous year. The statute is not quoted in the opinion, but its substance is set out. Two sections were under consideration. The court said:

"By the Act of 1869, the tax was to be upon 'all premiums *received,* in cash or otherwise.' But by the Act of 1871, it is authorized and required to be 'upon the premiums *received,*' and *also* on such as within the year 'shall have been *agreed* to be paid for any insurance effected, or agreed to be *effected or procured.*" [Page 16.]

In so far as this decision is based on the Statute of 1871, it is clearly not in point, because of the difference between the language of that statute and our own.

Metropolitan Life Insurance Company v. State, supra, also seems to be out of harmony with the majority of the adjudicated cases. It is to be noted that the tax there considered is based on the "gross amount of all receipts received in the State of Indiana." The ruling does not appear to rest upon the use of the word "gross" in the statute. The case appears to be out of harmony with the cases we have referred to and apparently not in harmony with the great weight of authority. In determining its weight as a precedent, we consider the use of the word "gross." The Indiana court makes some distinction between mutual insurance companies and those having capital stock. The company whose contract was under consideration in the case above referred to was a stock corporation.

II. The weight of authority clearly supports the contention of relator and adopts what we regard as the common sense construction of the stat-ute. It is a generally accepted rule that taxing statutes should be strictly construed in favor of the taxpayer, and such is the rule in this State. [In re Estate of Clark, 270 Mo. 351.]

**Taxing Statutes:**
**Strict Construction.**

Whatever may be said as a matter of bookkeeping theory, the plain common sense view remains that the insured only pays, and therefore the insurer only receives, the amount of the contractual premium, less the so-called dividends, which are applied as credits. If A pays $100 to his insurance company as his initial or contractual premium and at the end of the year is entitled to receive in cash $10 or to leave the $10 with the company and add $90 to it and thus pay his second's year's contractual premium, it may be said theoretically that he was paid $10 by the company and in turn has paid $100 to the company in settlement of his premium. If this course is continued for ten years, he has actually paid only $910 and that amount is all the money the company has actually received. The real essence of the entire transaction is that A has paid $90 each and every year and the first year has paid an additional $10 to cover contingencies, etc. He is all the while liable for the additional ten dollars which must be paid in any year when it is needed. The contractual premium for the second and ensuing years is satisfied by the payment of the $90 and the transfer of the untouched and unneeded ten dollars from the surplus of one year's business to anticipate the contingencies of the next year's business. If respondents' contention be correct, then the State is entitled under our statute to tax the $10 ten times at the rate of two per cent, instead of only once.

Under the prevalent rule that taxing statutes must be strictly construed, the State is not entitled to tax "premiums received" on the basis of "premiums contracted for" unless such is the clear meaning of the statute. The words "cash or notes" do not refer to the amount of the premium which is settled by the application of the so-called dividend. This has been frequently decided. Those words refer to the manner in which insured pays to the company the portion of the annual premium no taken care of by the application of the dividend.

292 Mo.—23

Counsel for respondents take the position that unless the so-called dividends constitute "a true abatement of premiums" the application thereof in settlement of the contractual premium should be construed as "premiums received," and that the tax should be collected on the full amount which insured by his contract is bound to pay. This is the distinction sought to be made in Metropolitan Life Insurance Company v. State, supra. Relying on said case, counsel contends in the language of that case that "where, as in this case, he is given the option of receiving a 'bonus' in cash and then paying his premium in full or of applying such bonus as a partial discharge of his contractual obligation and then paying the difference only, the transaction is substantially the same in either alternative." Theoretically, this is correct. Practically, it is incorrect. We cannot get away from the practical result in the illustration we used above. To adopt respondents' construction of the statute is to give a forced and unnatural construction to the statute and to construe it most strongly against the taxpayer.

After all, who pays the tax imposed by our statute? It is the foreign insurance company, or is it the policyholder? Clearly the latter. The imposition of this tax

Incidence of Tax.

upon the full contractual premium instead of only upon the actual premium received will certainly be passed on as an added cost of insurance to the policyholder. It should be, and we think is, the policy of the State to encourage the citizen to secure the protection to his family and himself in his old age afforded by insurance, and to make the cost to him as low as possible. This is an additional reason for construing the statute favorably to the taxpayer.

Respondents cite the case of Mass. Bond & Ins. Co. v. Chorn, 274 Mo. 15, l. c. 30, in support of their position. That case can be distinguished by the fact that the insurance company was there seeking to have the amount of premiums *actually* received in cash or notes reduced for taxation purposes by the amount of premiums returned to the insured because of cancellations or other-

wise and by the cost of reinsurance. It was not necessary to resort to a bookkeeping fiction in that case to show that the insurance company had actually received the premiums for the return of which credit was sought. By authorizing credit for reinsurance only in case of fire insurance companies, such credit is by the rule *expressio unius est exclusio alterius* denied other insurance companies. The return premiums involved in that case were not earned by the company because the risk terminated short of the period contracted for in the policy. If the risks had been carried for the full terms named in the policy, nothing would have been returned to the insured. No such situation exists here. The case therefore is not in point.

III. Respondents urge that the Insurance Department of this State for years has adopted and adhered to a departmental construction of this statute contrary to relator's contention and that we should give great weight to such construction. This rule is recognized in State Departmental ex rel. Gass v. Gordon, 266 Mo. l. c. 412, and Construction. such is the recognized rule. But a departmental construction can only be invoked where the language of the statute is ambiguous or doubtful. We do not regard the language of our statute as doubtful when construed in the light of the rule that taxing statutes must be strictly construed against the taxing power. In any event, a departmental construction of a revenue producing statute can never be entirely freed from the very natural inclination on the part of the department to resolve all doubts in favor of that construction which will bring the most revenue to the department and make the best showing for its activities. It is also quite in harmony with another phase of human nature for the insurance companies to fail to resist such departmental construction at the risk of departmental displeasure, especially when the ruling can be complied with at the ultimate expense of the policyholders.

In our judgment, the plain language of Section 6387, Revised Statutes 1919, authorizes the collection of the two per cent tax only upon the net premiums received by relator; that is to say, such taxes can only be collected upon the amount of the contractual premiums less credits thereon due to the application of so-called dividends or previous overpayments. The Superintendent of the Insurance Department should be required to certify to the State Auditor and State Treasurer that the amount of the tax relator should pay to this State as premiums received by it in this State or on account of business done in this State during the year 1920 is the sum of $7,368.14, and no more. The State Treasurer should be required to accept this amount in full settlement on said account.

Respondents have made no contention that mandamus is not the appropriate proceeding. That it is the proper remedy is shown by reference to State ex rel. Flaugh v. Jaudon, 227 S. W. 48, and cases cited.

*Mandamus.*

The alternative writ of mandamus heretofore issued should be made peremptory, and it is so ordered. All concur, except *Woodson, J.,* who dissents, and *Walker, J.,* who dissents in separate opinion.

WALKER, J. (dissenting).—I do not concur in the reasoning employed or the conclusion reached in the majority opinion. Precedents established in other jurisdictions become persuasive here only when the facts are parallel and the statutes are similar in context and purpose to those under consideration. These matters, having been affirmatively determined, the conclusion there reached may be found to be faulty and hence the precedent inapplicable. The contest waged here by the relator is to avoid the payment of a balance of $987.37, being a part of the annual tax upon the premiums received by the company for the year 1920. There is a provision in the policies issued by this company which becomes a part of the contract of insurance, whereby the company, each year, apportions to the policyholders a certain amount of

the interest earnings on the funds of the company in excess of those anticipated in the calculation of the premium. These earnings, from which this apportionment is made, are termed a surplus. The portion paid to each policyholder therefrom is designated as a dividend, which may, at his option, be paid to him in cash or applied to the payment of a premium, or converted into participating insurance or deposited with the company, which will as due by the company is, as stated, $987.37.

The stipulated or contractual premiums required to be paid by policyholders during the year 1920 on all policies issued in this State by the company during all or any part of that year aggregated $417,325.54. During that year the company declared dividends on Missouri policies in the sum of $48,918.06, all of which the policyholders elected might be applied in payment or part payment, as the fact might be, of premiums due on their policies for that year. The company contends that the total amount of the sum of the dividends thus applied should be deducted from the aggregate amount of business done by the company in this State for that year; and that the two per cent tax required to be paid by the company under Section 6387, Revised Statutes 1919, for the privilege of doing business in this State, should be calculated on the remainder. The difference between the amount of tax claimed by the State and that admitted as due by the Company is, as stated, $987.37.

The majority opinion sets out the statute (Sec. 6387, supra) which requires construction in the determination of the matter at issue. What constitutes ''the premiums received'' as the term is used in the statute is the vexed question. We have shown that a declared dividend becomes the property of the insured. This is evident from the nature of the transaction, but the conclusion is rendered absolute under the terms of the policy which, among other things, provides that declared dividends become absolutely the property of the insured. As such, they are held in trust by the company until disposed of by the owners under

"Premiums Received."

one of the options referred to. While so held, if the company should refuse to apply them as directed by the owners, they would have a right of action to compel a compliance with such directions. This simply to illustrate the complete character of the ownership by the policy-holders in the dividends.

The obligation of the company to pay dividends and that of the policyholder to pay premiums are correlated only in that both are created by the same instrument, viz., the policy, the perpetuity of which is necessary to the continued life of the entire transaction. The binding force of either is to no further extent dependent on the other. The fact that an option is given the policyholder to pay his premiums in part or in whole with dividends in no wise affects the character of such premiums or renders one of the obligations dependent upon the other beyond the privilege extended. The amount required to be paid by the policyholder to continue the contract of insurance is a stipulated premium. It is not changed by the fact that a portion of it may be paid by the application of a dividend and the balance by a direct remittance. Whether the obligation is satisfied in this manner or by a direct payment of the entire amount, a payment in full by the policyholder of the stipulated premium then due, is effected; the result is that the company transfers the cash it held in trust for the policyholder, and owned by him, to its own coffers as a part of the fund arising from the payment of premiums. In short, the total amount of cash received by the company for the year 1920 in payment of premiums was not affected by the manner of such payments. Of what concern, except to refine a technicality based on an assumption, is it whether these premiums were paid in part by money owing to policyholders or wholly by direct payments made by them? To contend that such payments do not constitute premiums received within the meaning of the statute is not tenable under any reasonable rule of interpretation.

The practice of the mutual adjustment of obligations by setting off one against the other is as old as the custom of barter and trade; but it has remained for the relator in applying a fund in its possession belonging to another to the payment of a debt due by the latter to it to contend that such application does not constitute a receipt by it of the amount thus applied.

The relator does not deny that it held the money of the policyholders in the manner stated, nor that all of the stipulated premiums have not been paid in full; but in some undefined way, that the manner of the payments of same changed their character and, hence, its obligation to the State should be reduced. There is no merit in this contention. It should be required to pay taxes on the full amount of all business done during the year, and this writ should be denied.

The reasoning in State ex rel. v. Wilson, 102 Kan. 752, is faulty, if the payments made there were as in the case at bar, in assuming that payments made on premiums from dividends constitute an abatement or credit on the amount due. This conclusion may be correct under the facts presented in that case, but under our statute, and as matter of fact, the payment of premiums out of dividends constitutes no abatement. In all instances the full amount of the premium is required to be paid; it cannot be construed as a credit except in the same sense that any other payment made by a debtor is a credit; in so far, however, as it assumes that the application of a dividend to the payment of a premium constitutes a favor to the policyholder, its conclusion is unfounded; he pays "as nominated in the bond," and the company demands and receives the full amount due it.

The facts in Comm. v. Penn. Mut. L. Ins. Co., 252 Pa. St. 512, are not parallel with those at bar. There the deductions sought by the company to be made from the maximum premiums are stated to have never been received by it, and hence the company should not be taxed on same. No such facts are present here.

In Comm. v. Met. L. Ins. Co., 254 Pa. St. 510, it is held that a statute which authorized the levying of a tax upon the entire amount of premiums received did not apply to allotments in reduction of premiums. There is no reduction of premiums in the instant case.

It is difficult to follow the reasoning of the majority opinion wherein it is held that the imposition of the tax authorized by the statute (Sec. 6387, supra) upon the full contractual premiums instead of only upon the actual premiums received will be passed on as an added cost of insurance to the policy-holder. The use of the terms "actual premium received" is misleading. The actual premiums received, as we have repeatedly said, are represented by the aggregate sum of $417,325.54. The burden assumed by the holders of the policies on which these premiums were paid is fixed by their contracts, and cannot be passed on "as an added cost of insurance to them;" nor under our regulatory laws can the cost of insurance be increased in future contracts of insurance unless legislative provision is made therefor.