STATE OF MARYLAND *v.* BACKUS CHEVROLET COMPANY, INC.

[No. 56, January Term, 1936.]

*Decided April 9th, 1936.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Herbert R. O'Conor, Attorney General,* and *William L. Henderson, Assistant Attorney General,* with whom were *Edgar Allan Poe, Jr., Special Counsel,* on the brief, for the appellant.

*William Lee Rawls* and *Herbert Levy,* with whom were *Allan Sauerwein, William L. Marbury, Jr., Tydings, Sauerwein, Levy & Archer,* and *Marbury, Gosnell & Williams,* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The purpose of this suit by the State of Maryland against the Backus Chevrolet Company, Inc., is to recover taxes claimed by the State to be due from the defendant corporation under the Emergency Gross Receipts Tax Law. As enacted by chapter 188 of the Acts of 1935 of the General Assembly, to add new sections to article 56 of the Code (Supp. 1929), the statute provides:

"For the privilege of engaging in the business of selling tangible personal property at retail, there is hereby imposed upon every person engaging in such business a license fee or tax, in addition to all other fees or taxes imposed by law, at the rate of one per centum of the

gross receipts of any such person, on or after April 1st, 1935, to and including March 31st, 1936, from a sale of all tangible personal property at retail in this State." Article 56, sec. 72B (Code Pub. Gen. Laws [Supp. 1935], art. 56, sec. 72B).

By the succeeding section (72C) it is provided that on or before the 10th day of May, 1935, and of each calendar month thereafter, "every vendor who has made any sales at retail subject to the tax hereby imposed during the preceding calendar month, shall make a return to the Comptroller, stating the name of the vendor, his, her or its address, and the amount of the total selling price of all tangible personal property so sold, and shall pay the Comptroller the amount of the tax herein imposed."

The act defines the term "person" to include a corporation, the word "sale" as meaning "any transfer of the ownership or title of tangible personal property to the consumer for use and not for purposes of resale for a monetary consideration," and the word "price" as signifying "the price to the ultimate consumer or user" without any deductions on account of costs or expenses, but, in "the case of sales in which the consideration is paid or to be paid partly in money and partly in other tangible personal property, the price shall be only that part paid and to be paid in money." Section 72A (Code Pub. Gen. Laws [Supp. 1935], art. 56, sec. 72A).

The defendant, during the months of April, May, June, and July, 1935, sold to purchasers for use and not for resale, and for monetary considerations totaling $40,-894.76, used cars which had been accepted by the defendant in partial settlement for new cars sold in the prosecution of its business as an automobile dealer. It is with respect to the sales of the used cars thus acquired that the suit charges the defendant with liability for the one per cent. gross receipts tax. No such liability is asserted in regard to the defendant's sales of new cars, in view of chapter 539 of the Acts of 1935, supplementing chapter 188 by the addition of sections 72CC and 72CCC to article 56 of the Code, Supp. 1929 (Code Pub. Gen.

Laws [Supp. 1935], art. 56, secs. 72CC, 72CCC) as follows:

"72CC. In addition to the charges prescribed by Sections 202 and 203A of Article 56 of the Code of Public General Laws of Maryland (1929 Supplement), for the issuance of an original certificate of title there is hereby imposed, and the Commissioner of Motor Vehicles shall collect a tax upon the issuance of such certificate of title at the rate of one per centum of the fair market value of every motor vehicle for which a certificate of title is applied for and issued. The Commissioner of Motor Vehicles shall require every applicant to supply such information as he may deem necessary as to the time of purchase, the purchase price, and other information relative to the determination of the fair market value. The Commissioner of Motor Vehicles shall remit all sums collected under the provisions of this section to the State Comptroller, who shall pay the same into a special account in the general treasury, to be known as the 'State Emergency Relief Fund,' and disburse the same for the purposes and in the manner provided in the succeeding sections of this Act [subtitle]."

"72CCC. Registered motor vehicle dealers, in making their reports and returns to the State Comptroller for the purpose of paying the gross receipts tax imposed by Section 72CC, shall be permitted to deduct all gross sales of motor vehicles from their total gross sales and shall pay the said Comptroller the one per cent. tax on the remainder of their gross sales."

While the provision in the last quoted section for the deduction of "all gross sales of motor vehicles" is sufficiently broad in its literal effect to include sales of both new and used cars, it is the State's theory that the context indicates an intention to permit such a deduction only as to sales of cars for which original, and therefore taxable, certificates of title were required to be issued, and that, since the used car sales described in the declaration did not necessitate the issuance of original certificates of title, the defendant is not authorized to deduct those sales

when reporting the figures from which its gross receipts tax should properly be determined.

The distinction between original and subsequent certificates of title for the same car is indicated in the following provisions of section 202 of article 56 of the Code (Supp. 1935) : "No certificate of the registration of any vehicle or registration markers therefor, whether original issues or duplicates, shall hereafter be issued or furnished by the Commissioner of Motor Vehicles unless the applicant therefor shall at the same time make application for and be granted an official certificate of title of such motor vehicle, or shall present satisfactory evidence that such a certificate has been previously issued to the applicant covering such motor vehicle. * * * The charge for each original certificate so issued shall be one dollar ($1.00) which charge shall be in addition to the charge for the registration of such motor vehicle. Said certificate shall be good for the life of the car so long as the same is owned or held by the original holder of such certificate, and shall not have to be renewed annually. * * * In the event of the sale or transfer of the ownership, title or right of possession, of a motor vehicle for which an original certificate of title has been issued as aforesaid, the original holder of such certificate shall endorse on the back of the same an assignment thereof, with warranty of title in form printed thereon, with a statement under oath of all liens or encumbrances on said motor vehicle, and shall deliver the same to the purchaser or transferee at the time of the delivery to him of such motor vehicle. The purchaser or transferee shall then immediately present such certificate, assigned as aforesaid, to the Commissioner of Motor Vehicles, and file an application with said Commissioner of Motor Vehicles on a form prepared and furnished by him making application for the registration of such motor vehicle in the name of said applicant; whereupon a new certificate of title shall be issued to the assignee, the charge therefor being one dollar ($1.00)."

The reason for the enactment of sections 72CC and

72CCC, by chapter 539 of the Acts of 1935, is thus stated in the Attorney General's brief: "These sections were enacted for a special and a limited purpose. It was realized that, because new cars are sold at nationally advertised prices, and because of the geographical status of Maryland as a border state, and because at the time of the passage of the Maryland Act no similar Acts existed in neighboring states or in the District of Columbia (except West Virginia), it would be a comparatively simple matter for any Maryland resident desiring to purchase a new car to drive to Washington, Wilmington or Philadelphia, turn in his old car, and return in a new one, upon which one per cent. of the purchase price might be saved. It was represented to the Legislature that two particular results would follow: (1) the State would lose revenue, due to this exodus of prospective purchasers; and (2) the resident automobile dealers would be at a disadvantage and some might be unable to continue in business, thereby again curtailing the State's revenue. The plan of collecting a titling tax on cars not previously titled in Maryland answered both of these objections, and the credit to dealers answered the obvious purpose of forestalling a claim that the tax was duplicated."

In reference to the validity of the special provision for automobile dealers by section 72CCC, it was said in the opinion by Chief Judge Bond in *Jones v. Gordy*, 169 Md. 173, 180 A. 272, 277: "The dealers are already subject to the separate titling tax, and this, with the remainder of the gross receipts tax, may have been found to put them on a basis of substantial equality with other dealers. The titling tax is collected with greater convenience, and that fact is one which might move the Legislature to retain it. We cannot say with assurance that the easy mobility of motor vehicles and the competition with dealers in other jurisdictions do not, as argued, require special, separate treatment of the dealers. Such possibilities would prevent the court's concluding that the partial exemption of motor vehicle dealers constitutes an unreasonable discrimination."

The difficulty in the interpretation of section 72CCC arises from the fact that it refers to the gross receipts tax as being "imposed by section 72CC," whereas no such tax is imposed by that section. The tax therein provided for is payable upon the issuance of an original certificate of title, and upon the fair market value of the motor vehicle, whether or not the transfer of ownership results from the sale. It is only by section 72B that the gross receipts tax is imposed. Under that section, if it had not been qualified by the subsequently enacted sections 72CC and 72CCC, the defendant would have been taxable at the rate of one per cent. of the gross receipts, during the specified period, from all of its retail sales of tangible personal property. With respect to its sales of accessories and other personal property, exclusive of motor vehicles, the defendant has been charged, and has paid, taxes in accordance with the requirements of section 72B. It has declined to pay taxes on its receipts from used motor vehicles because of its understanding that sections 72CC and 72CCC relieve it of that duty. On behalf of the State, as already observed, it is argued that, according to the true intention of those sections, the defendant is relieved of the gross receipts tax only to the extent of its sales of cars requiring original certificates of title, and therefore within the purview of the title tax provision. The only used cars which could be included in that category would be such as might have been acquired by the defendant from sources outside of Maryland, and consequently for the first time needing a title certificate under our law. It does not appear from the record that any of the used cars sold by the defendant during the period mentioned in the declaration were so acquired.

The title certificate tax provided by section 72CC, in compensation for the deduction allowed by section 72CCC to motor vehicle dealers from the gross receipts on which they would otherwise have been fully taxable, at the same rate, is "one per centum of the fair market value" of every motor vehicle for which an original certificate of title is issued. That valuation disregards the method by

which settlement between the dealer and the purchaser is effected. Whether the purchase price of an automobile is paid in cash at the time of its sale, or is to be paid in installments, or is partly satisfied by the delivery of a used car, the title tax is payable immediately upon its entire value, if no certificate of title had previously been issued for it in this State. But if the sale were subject to the gross receipts tax imposed by section 72B, the dealer would pay the tax only on the amount of the monetary consideration for the sale. The portion of the price for which a used car was taken in settlement would be excluded for the purposes of the tax computation until a sale of the used card had produced receipts of "money paid or to be paid" for which the dealer could be taxed. A series of used car transactions might occur before the dealer would receive total monetary considerations equal to the price at which an original sale had been negotiated. A gross receipts tax at the rate of one per cent. on the aggregate amounts thus realized by a dealer would be equivalent to the one per cent. title certificate tax on the value of a new automobile from the sale of which the acceptance and disposition of one or more used cars had resulted. Upon the State's theory, the payment of a title certificate tax of one per cent. on the full value of an automobile sold by a dealer would still leave him subject to a gross receipts tax at the same rate on money derived from the sale of a used car which had been taken in trade as representing a part of the value for which the title tax had already been paid. In our opinion, this would not be consistent with the design of sections 72CC and 72CCC to substitute the title tax for the gross receipts tax of which motor vehicle dealers were thereby relieved to the extent specified. The provision is that such dealers may deduct "all gross sales of motor vehicles from their total gross sales," and pay "the one per cent. tax on the remainder of their gross sales." That authorization is sufficiently comprehensive to sustain the right of deduction upon which the defendant relies in opposition to this suit. The words "gross sales" were evidently used in section

72CCC as indicating the same basis of taxation described in that section as "gross receipts." It is "in making their reports and returns to the State Comptroller for the purpose of paying the gross receipts tax" that registered dealers are "permitted to deduct all gross sales of motor vehicles from their total gross sales." The only gross receipts tax imposed by any of the legislation referred to is that for which section 72B provides. It is only with a view to the gross receipts tax imposed by section 72B that a report to the State Comptroller is required by any of the sections added to article 56 of the Code by chapters 188 and 539 of the Acts of 1935. The reference in section 72CCC to the gross receipts tax as "imposed by section 72CC" must therefore be considered an inadvertence. It is clear that such a mistake in designating the section under which the tax is actually chargeable should not be allowed to prevent the application of the law in accordance with its evident purpose. *Levin v. Hewes,* 118 Md. 624, 86 A. 233; *Sutherland on Statutory Construction,* sec. 410.

It is argued on behalf of the State that the adoption of the defendant's interpretation of section 72CCC might have the result of exempting dealers engaged exclusively in the business of selling used cars from the effect of the gross receipts tax, and that such an exemption would involve an unreasonable discrimination in favor of that class of dealers. It would not be appropriate to determine in the present case whether such dealers were intended to have the benefit of the deduction for which section 72CCC provides, and whether such an application of the section would to that extent involve an invalid classification. The defendant is not a dealer in used cars exclusively, but deals in such cars incidentally to the prosecution of its primary business of selling new automobiles. If dealers who buy and sell only used cars are within the purview of section 72CCC, their inclusion, though held to be void, would not affect the rights conferred by the section upon dealers of the class to which the defendant belongs, since there is no reason to presume that the

legislation would not have been enacted unless both classes were included. *Shellfish Commissioners v. Mansfield*, 125 Md. 630, 94 A. 207; *Ruark v. International Union*, 157 Md. 576, 146 A. 797. Opposed to such a presumption is the recognition of the section's severability in the provision of the statute by which it was enacted (Acts of 1935, ch. 539, sec. 2), that the gross receipts tax, under chapter 188 of the Acts of 1935, "shall stand notwithstanding the invalidity of any section or part of a section or any part of this act."

The case was tried before the lower court sitting as a jury. On the State's appeal from the judgment for the defendant in which the trial resulted, the question discussed in this opinion is presented by rulings against prayers by which the State's theory was asserted and in favor of instructions by which the defendant's liability was denied. In thus ruling, upon the undisputed facts, the trial court committed no error.

*Judgment affirmed.*