THE STATE, Appellant, v. HALLENBERG-WAGNER MOTOR COMPANY, a Corporation.—108 S. W. (2d) 398.

Division Two, August 26, 1937.

*Roy McKittrick,* Attorney General, *Olliver W. Nolen* and *Edward H. Miller,* Assistant Attorneys General, for appellant.

*Victor Packman* and *Anderson, Gilbert, Wolfort, Allen & Bierman* for respondent.

BOHLING, C.—We have for determination whether the 1933 Missouri sales tax [Ex. Sess. Laws 1933-1934, p. 155-166] is to be computed on the basis of actual cash receipts or the basis of the total selling price of each of several articles involved in a chain of transactions whereby a retailer, who accepts other merchandise in part payment of the purchase price, finally converts a given article of merchandise into cash, and, possibly, certain constitutional features of said law. The State, appellant, maintains the tax should be computed on the total selling price of the several articles; whereas Hallenberg-Wagner Motor Company, respondent, a corporation engaged in the business of selling new and used automobiles at retail, maintains the tax should be computed on the actual cash receipts— money or charge or time sales under the act. The provisions of said law presented by the litigants for construction read:

"Sec. 1. Definitions. The following words, terms and phrases when used in this act have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: . . .

"(b) 'Sale' means any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for valuable consideration. . . .

"(d) 'Gross receipts' means the total amount of the sale price of the sales at retail including any services that are a part of such sales made by the businesses herein referred to, capable of being valued in money, whether received in money or otherwise; *provided, however*, that 'Gross receipts' shall not include the sale price of property returned by customers when the full sale price thereof is refunded either in cash or by credit. For the purpose of this act, the total amount of the sale price above mentioned shall be deemed to be the amount received. . . .

"(g) 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property for a valuable consideration. . . .

"Sec. 2. Tax imposed on retail sales—amount. For the privilege of a person engaging in the business of selling tangible personal property at retail a tax is hereby imposed upon such person at the rate of one-half of one per cent of the gross receipts of any such person from the sale of all tangible personal property sold in this state on and after the effective date of this act to and including December 31, 1935. . . .

"Sec. 5. Monthly returns to be filed—date of final return. . . . In case of charge and time sales the amount thereof shall be included as sales in said returns as and when payments are received by the person, without any deduction therefrom on account of the cost of the property sold, the cost of the materials used, labor or service cost, interest paid, losses or any other expenses whatsoever. . . .

"Sec. 6. Refunds to purchasers to be deducted. Refunds made by the seller during the preceding calendar month to purchasers, on account of tangible personal property, substances, services and things returned to the seller, shall be allowed as a deduction in case the seller had theretofore included the receipts from the sale of such in a return made by such person and had paid the tax imposed by this act with respect to such receipts."

Preliminary to a discussion of the issues involved, respondent urges upon us certain rules governing the construction of statutes, useful to remove, not create, doubt in ascertaining the true intent of a law. [59 C. J., p. 943, sec. 563; Clark v. Kansas City, etc. Railroad Co., 219 Mo. 524, 534, 118 S. W. 40, 44 (stating: "We must

not interpret where there is no need of it''); De Jarnett v. Ticka-meyer, 328 Mo. 153, 158, 40 S. W. (2d) 686, 688.] We find the rules relied upon, with their limitations, etc., stated in Corpus Juris, and quote briefly therefrom:

''Provided always that the interpretation is reasonable and not in conflict with the legislative intent, it is a cardinal rule of con-struction of statutes that effect must be given, if possible, to the whole statute and every part thereof.'' [59 C. J., p. 995, sec. 595, nn. 44, 45 and n. 48 (stating: ''. . . so an interpretation which gives effect to the entire language will be selected as against one which does not''; Castilo v. State Highway Commission, 312 Mo. 244, 266, 279 S. W. 673, 677(5) (stating ''If possible, this language must be given some force and effect. . . . In order to carry his point, one may not cull out parts of the statute inconsistent with his view and treat them as surplusage or idle repetition''); Palmer v. Omer, 316 Mo. 1188, 1195, 295 S. W. 123, 126(6); Bowers v. Kansas City P. S. Co., 328 Mo. 770, 781, 41 S. W. (2d) 810, 815(17, 18); Bowers v. Missouri Mut. Assn., 333 Mo. 492, 505(2), 62 S. W. (2d) 1058, 1062(3); Rutter v. Carothers, 223 Mo. 631, 643, 122 S. W. 1056, 1059(a).]

''The courts must confine themselves to the construction of the law as it is, and not attempt . . . to supply defective legislation, or otherwise amend or change the law under the guise of construc-tion.'' [59 C. J., p. 945, nn. 52, 54, 55; the Clark case, supra; State ex rel. v. Offutt, 223 Mo. App. 1172, 1175, 26 S. W. (2d) 830, 831(2).]

Like general rules govern the construction of revenue laws, which, when ''ambiguous or doubtful, will be construed strictly in favor of the taxpayer and against the taxing power'' [59 C. J., p. 1131, sec. 670, nn. 84-86; State ex rel. v. Gehner (Banc), 325 Mo. 24, 29, 27 S. W. (2d) 1, 3(3), citing authority]; but, of course, the rule of strict construction may not serve to defeat the intention of the lawmaker (Re Clark's Estate, 270 Mo. 351, 362, 194 S. W. 54, 57(2); State ex rel. v. Baker (Banc), 316 Mo. 853, 858, 859, 293 S. W. 399, 401(2, 4, 5)].

Respondent, to sustain its contention that the act provides for the computation of the tax on the cash receipts only, argues such legislative intent is deducible from a consideration of the act as a whole when construed, as taxing statutes should be construed, strictly against the taxing authority and in favor of the taxpayer; because: (1) the tax is imposed ''at the rate of one-half of one per cent of the gross receipts'' (Sec. 2); (2) the taxpayer is allowed a de-duction for refunds made on property sold when returned if the tax had been theretofore paid on the receipts from the previous sale of the property (Sec. 6 and Subsec. (d) of Sec. 1); (3) the amount

of charge and time sales are to be accounted for only as and when payments are received (Sec. 5) ; and (4), under Subsec. (d), "gross receipts is not individuated to each particular sale, but is 'the total amount of the sale price of the sales at retail;' " that is, "it is the gross receipts [in money] from all the sales;" and the transactions involving the conversion of the original article sold into money through the medium of a subsequent sale or sales of merchandise accepted in part payment in a chain of transactions found necessary in the conduct of the business of the taxpayer to convert said original article into money, enter only on the basis of money actually received in computing the total amount of the sale price of the sales. Respondent's argument may be well enough as far as it goes, but it fails to take into consideration all the applicable provisions of the law.

Under Section 1, Subsection (b), " 'Sale' means any transfer, exchange or barter . . . of tangible personal property for valuable consideration." The acceptance of a "trade-in" automobile in part payment of the purchase price of an automobile sold falls within the "exchange or barter" provisions of said definition of "sale," and is a "valuable consideration"—a term broader than money or cash. Under Section 1, Subsection (d), " 'Gross receipts' means the total amount of the sale price of the sales at retail including any services that are a part of such sales made by the businesses herein referred to, capable of being valued in money, whether received in money or otherwise." The phrase "whether received in money or otherwise" applies to the preceding portions of the definition of "gross receipts." The "trade-in" automobile is a valuable consideration, capable of being valued in money, its value standing agreed between the parties, and is within the meaning of the term "otherwise" in said definition. And "the total amount of the sale price *above mentioned* shall be deemed the amount received" (said Subsec. (d) ; that is, whether received in money or otherwise. The cash payments constitute money received and the "trade-in" automobiles constitute the "otherwise" received. Under Section 1, Subsection (g), " 'sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser . . . for a valuable consideration." In each instance the title passes to the purchaser and for a valuable consideration—money or other property. Further, our General Assembly has established certain guide posts for the construction of all statutes of this State; *vide*: "Whenever . . . words imputing the plural number are used in describing or referring to any matter, . . . any single matter . . . shall be deemed to be included, although distributive words may not be used" [Sec. 651, R. S. 1929, Mo. Stat. Ann., p. 4897] and "words and phrases shall be taken in their plain or ordinary and usual sense"

[Sec. 655, R. S. 1929, Mo. Stat. Ann., p. 4899]. "All" emphasizes the "tangible personal property" sold by and "gross" accentuates the "receipts" of the taxpayer upon which the tax imposed is to be computed. Gross means: "4. Whole; entire; total; as, the *gross* sum, amount, weight;—opposed to *net.* The *gross* earnings, receipts, or the like, are the entire earnings, receipts, or the like, under consideration, without any deduction." Webster's New International Dictionary (2 Ed.), Tit. "Gross." All means: "1. The whole of:—used with a singular noun or pronoun, and referring to amount, quantity, extent, duration, quality, or degree: as, *all* the wheat; *all* the year; *all* this. . . . 2. The whole number or sum of;—used collectively, with a plural noun or pronoun expressing an aggregate. . . . 3. Every member or individual component of; each one of;—used·with a plural noun. In this sense, *all* is used generically ánd distributively. . . . Syn.—*All, every, each* agree in inclusiveness, but differ in stress. *All* collects, *every* divides, *each* distributes. *All* refers rather to the aggregate under which the individuals are subsumed than to the individuals themselves; as, *all* men are mortal. *Every* refers to the individuals, but never denotes the separate individual; as *every* man must die. *Each* refers to the separate individual, but never denotes this or that one in particular; as, *each* must meet death alone." Id., Tit. "All." "Gross" and "all"—whole, entire, total—uncompromisingly express the aggregate of the parts, undiminished and intact. So, complying with legislative admonitions for ascertaining the legislative intent and interpolating into Section. 2 of said act the legislative guide posts set up to secure precision and certainty, we have, in so far as here involved: ". . . a tax . . . imposed . . . at the rate of one-half of one per cent of the total money or other property, capable of being valued in money, without any deductions, received by any such person from the transfer, exchange or barter of the ownership of, or title to each and every item of (all being inclusive precludes its application to the sale of 'some only' or 'all except' that portion represented by other merchandise received in exchange) tangible personal property for a valuable consideration—money or property. . . ." Such construction gives force and effect to all the applicable provisions of said act; and a consideration of Section 6, or the like provisions of Section 1, Subsection (d), or the quoted portion of Section 5 of said act does not militate against this conclusion, for said provisions are as applicable under this as under respondent's construction.

The State refers us to the cases of State ex rel. v. Welsh (S. D.), 270 N. W. 852 (where "gross receipts" was held to embrace "money, credits, property or other money's worth"); Montgomery Ward & Co. v. Fry, 277 Mich. 260, 269 N. W. 166; Thomas Auto Co. v. Wiseman (Ark.), 93 S. W. (2d) 138; State v. Bachus Chevrolet Co.

(Md.), 184 Atl. 160; McCanless Motor Co. v. Maxwell, 210 N. C. 725, 188 S. E. 389 (holding resale of "trade-in" automobile received in part payment of used automobile not exempt under statute exempting only resale of "trade-in" automobile received in part payment of new automobile). The language employed in the statutes involved differs, and a discussion of the cases is not essential to a determination of the issue. State ex rel. v. Hyde, 292 Mo. 342, 349(I), 241 S. W. 396, 397(1), cited by respondent, involved materially different statutory language—read the court's remarks concerning the word "gross" in the concluding paragraph on the point.

■ The inherent power of the Missouri General Assembly to levy taxes, independent of constitutional grant, is subject only to limitations prescribed in the Federal and State constitutions. [State ex rel. v. St. Louis, 318 Mo. 870, 894, 2 S. W. (2d) 713, 720(11); Hannibal & St. J. Railroad Co. v. State Board of Equalization, 64 Mo. 294, 307; State ex rel. v. Smith, 338 Mo. 409, 90 S. W. (2d) 405, 406(1).] Respondent's assault against the foregoing construction on the stated ground it results in double taxation confuses, we think, nonuniformity in taxation with double taxation. Respondent refers us to no constitutional prohibition against double taxation, and the cases relied upon [Auto Gas Co. v. St. Louis, 326 Mo. 435, 443, 35 S. W. (2d) 281, 283(3); State ex rel. v. Louisiana & M. Railroad Co., 196 Mo. 523, 535, 94 S. W. 279, 281; and State ex rel. v. Koeln, 278 Mo. 28, 39, 211 S. W. 31, 34] are only to the effect that double taxation is not favored and is not to be presumed; illegal double taxation occurring when a given subject of taxation contributes twice to the same burden while other subjects of the same class are required to contribute but once. [See, generally, Cooley, on Taxation (4 Ed.), sections 1684 and 223-246; 61 C. J., pp. 137-147, secs. 69-86, 37 C. J., pp. 209-211, secs. 62-64.] We, therefore, do not pause to inquire into the issue in greater detail; as:

■ Respondent says the tax is not uniform upon the same class of subjects within the territorial limits of the authority levying the tax (Mo. Const. Art. 10, Sec. 3, Mo. Stat. Ann., p. 733] because the tax rate is greater upon automobile dealers who accept used automobiles in part payment than upon other merchants; and relies on St. Charles ex rel. v. Schulte, 305 Mo. 125, 128, 264 S. W. 654, 655(3, 4); St. Louis v. Spiegel, 75 Mo. 145, and 90 Mo. 587, 2 S. W. 839, which hold said constitutional provision applicable to occupation license taxes and satisfied when the burden falls alike on all taxpayers in substantially the same situation, otherwise not. The rate applies alike to all retailers whether they accept or do not accept merchandise, new or used, in part payment—alike to retailers merchandising new automobiles; retailers merchandising used automobiles; retailers merchandising new and used automobiles; retailers merchandising goods, wares and merchandise—the country

store accepting products of the farm in part payment as well as automobile retailers' accepting used automobiles or other commodities or service in part payment. A number of observations might be made; but such nonuniformity or duplication, in the popular as distinguished from the legal sense of the terms, as apparently occurs to respondent arises from the policy adopted by respondent for the conduct of its business—a policy of its own choosing and no doubt possessing advantageous features fully justifying it. The tax is exacted at the same rate throughout the state upon all subject to its exaction. The rate is uniform within the meaning of Article 10, Section 3, supra.

Respondent also asserts the act, under the above construction, violates "the provisions of the Missouri Constitution and the United States Constitution, which forbid the taking of property without due process of law, and guarantee to respondent the equal protection of the law." The matter is not further developed. While possibly good as an assignment, the issue or issues are not presented in conformity with our Rule 15 [Hartkoff v. Elliott, 339 Mo. 1009, 99 S. W. (2d) 25; Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 944(18), 59 S. W. (2d) 633, 639(21)], and are not before us for consideration.

The judgment is reversed and the cause remanded with directions to enter judgment for appellant in accord with the facts set forth in the stipulation. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.