## RUBY SPERRY v. ALLIE COOK, Appellant.

### Division One, December 24, 1912.

1. **HOMESTEAD: Exemptions: Filing Deed: Cause of Action.** The exemption of the homestead statutes applies to all causes of action accruing after the filing of the deed by which the title is vested in the execution or attachment debtor, even though the property may not have become a homestead until after the cause of action upon which 'the process is founded had accrued.

2. **————: ————:' Cause of Action: Accrual: Breach of Promise to Marry.** A cause of action for breach of promise of marriage does not accrue (and therefore does not "exist" under the exemption to the homestead statutes) until after breach of the promise by one of the parties.

Appeal from DeKalb Circuit Court.—*Hon. A. D. Burnes*, Judge.

REVERSED AND REMANDED.

*Hewitt & Hewitt* for appellant.

(1) The debtor acquired the homestead on the 11th of February, 1904, that being the day on which the deed to the same was filed for record in the office of the recorder of deeds for DeKalb county. R. S. 1899, Sec. 3622; Shindler v. Givens, 63 Mo. 396; Bank v. Gale, 42 Vt. 27; Lamb v. Mason, 45 Vt. 500; Finnegan v. Prindeville, 83 Mo. 517; O'Shea v. Payne, 81 Mo. 519; Payne v. Fraley, 165 Mo. 196. (2) The primary rule of statutory construction of homestead laws is that the intention of the Legislature governs. And the courts in view of the benevolent purpose of these statutes have almost universally held that they are to be liberally construed. 12 Am. & Eng. Ency. Law (2 Ed.), p. 533, note 5, and p. 535. (3) The primary right arising under the promise to the respondent was to have the promise fulfilled on the 24th day of Feb-

ruary, 1904, and it was the corresponding duty of the appellant to fulfill his promise; the delict or wrong done by the defendant consisted in the breach of this right or duty. It was these elements that constituted respondent's cause of action. To state briefly, the cause of action consisted of the right belonging to respondent and the breach committed by appellant. Pomeroy's Remedies, sec. 452; Noonan v. Pardee, 200 Pa. St. 474, 55 L. R. A. 474; Tube Co. v. Burgess Co., 40 N. Y. Supp. 871; Post v. Campau, 42 Mich. 90; Fields v. Daisy G. M. Co., 26 Utah, 373; Matz v. Railroad, 85 Fed. 180; Cause of Action, Bouvier's Law Dict.; 2 Words & Phrases, p. 1015; Trammell v. Vaughn, 158 Mo. 226; Wanneck v. Kratke, 66 L. R. A. 801, note 5. (4) The verbal noun "existing," as used in the statute, Sec. 3622, R. S. 1899, in connection with "cause of action," defined by Webster as being a fact, an entity, the state of being. Note the language of Sec. 3622, R. S. 1899, is "upon all causes of action existing." Plaintiff's cause of action did not come into existence, or being, till the breach of her right to have the contract fulfilled. (5) Respondent did not become a creditor of defendant until the breach of the contract February 17, 1904, viz., the date of the marriage. 14 Am. & Eng. Ency. Law (2 Ed), 253; Loring v. Groomer, 142 Mo. 9.

*Platt Hubbell* and *George Hubbell* for respondent.

(1) This is an action for breach of a contract. This is an action *ex contractu*—not an action *ex delicto*. Broyhill v. Norton, 175 Mo. 203. "The date of the execution of the contract and not that of the breach of it, governs in respect to the priority of the creditor's claim over that of the homestead." 15 Am. & Eng. Ency. Law, 634; Berry v. Ewing, 91 Mo. 395; Travis v. Davis, 15 S. W. (Ky.) 525; Stivers v. Horn, 62 Mo. 476; Lincoln v. Rome, 64 Mo. 138. Plaintiff's

cause of action grew out of a breach of a promise to marry, made in June, 1903. The defendant's liability was created when he entered into that contract. The cause of action accrued then, though the right of action did not come into existence till the breach of that promise. The distinction between the terms cause of action and right of action should not be overlooked. Titus v. Warren, 67 Vt. 242; Ellinger v. Thomas, 64 Kan. 180; Ingram v. Wilson, 125 Fed. 913. The case of Loring v. Groomer, 142 Mo. 1, is not in point because there was no personal contract in that case— no obligation *in personam*—there was an obligation *in rem,* a covenant of general warranty "which runs with the land." (2) Ownership, filing of deed for record, occupancy of the land, and the marriage of the defendant must all exist at the same time, before the right to homestead exemption could come into existence. Barton v. Walker, 165 Mo. 25; Rose v. Caton, 168 Mo. 296; Holland v. Rongey, 168 Mo. 16; Burton v. Look, 162 Mo. 512.

BROWN, C.—This cause was certified to this court upon a division of opinion in the Kansas City Court of Appeals, the majority of that court being in favor of the affirmance of the judgment below, ELLISON, J., dissenting. It is a proceeding in the DeKalb county Circuit Court to quash the levy of an execution on land in that county on the ground that the property levied on was the homestead of Cook, the judgment debtor. The majority opinion of the Court of Appeals (Sperry v. Cook, 138 Mo. App. 296, 297) contains a succinct statement which clearly presents the single issue as follows:

"In June, 1903, defendant, whose right name is J. Alden Cook, promised to marry plaintiff and February 24, 1904, was fixed as the date of the wedding. In October, defendant bought a farm of eighty acres in DeKalb county and filed the deed for record on

February 11, 1904. Six days later, he married another
woman, and in March he and his wife began the oc-
cupancy of the farm as their homestead.   Plaintiff
then sued defendant in the circuit court of DeKalb
county to recover damages for breach of promise of
marriage and on May 7 following, obtained judgment
in the sum of $1750.  She had execution issued on
this judgment and levied on the farm and the sole
question for our consideration is whether defendant
had acquired a homestead right to the property as
against the cause of action on which plaintiff's judg-
ment is founded.''

Sec. 6711, R. S. 1909, provides: ''Such homestead
shall be subject to attachment and levy of execution
upon all causes of action existing at the time of the
acquiring such homestead, except as herein otherwise
provided; and for this purpose such time shall be the
date of the filing in the proper office for the records of
deeds, the deed of such homestead, when the party
holds title under a deed, but when he holds title by
descent or devise, from the time he becomes invested
with the title thereto; and in case of existing estates,
such homestead shall not be subject to attachment or
levy of execution upon any liability hereafter cre-
ated.''   The question involves the construction of this
provision to ascertain (1) when the homestead of the
appellant was acquired, and (2) when the cause of ac-
tion represented by the judgment under which the re-
spondent seeks to sell it began to exist.

I.  As was said for this court by Fox, J., in Sharp
v. Stewart, 185 Mo. 518, 529, the subject of homestead
is one in which the courts have manifested a very deep
consideration, and ''in view of the benevolent purposes
sought to be accomplished by them, it has been nearly
the universal ruling of the courts that such statutes
should be liberally construed.''   It also assists us if we
bear in mind that these statutes are not in derogation

of the common law. The execution statutes authorizing the sale of these lands are in derogation of the common law, and the homestead statutes are simply restrictive of the innovation (Wharton on Real Property [6 Ed.], 309); for, "by the common law a man could only have satisfaction of the goods, chattels, and the present profits of lands, . . . but not the possession of the lands themselves." [3 Blackstone's Commentaries, 418.] So there is nothing which requires or even justifies us in extending the operation of these restrictive provisions beyond the scope of a reasonable interpretation of the words in which they are expressed, whatever may be our own idea of the duty which rested upon the Legislature.

Section 6704 exempts the homestead of every housekeeper or head of a family, consisting of a dwelling house and appurtenances and the land used in connection therewith, to the amount and value named, which is or *shall be* used by such housekeeper or head of a family as such homestead, from attachment and execution, except as provided in the act. There is nothing uncertain about this. Leaving, for the moment the exceptions out of our consideration, it refers only to the time the property is sought to be taken in execution; so that if it should be thus occupied at the time, it would come within the terms of the exemption, unless there might be some constitutional question raised as to its application to contractual obligations assumed before the enactment of the law. We must, then, look for any modification of this absolute exemption from the operation of the writs named, in some other portion of the act.

In this inquiry the history of the law is helpful. The first homestead act (Laws 1863, p. 21) provided for the exemption "from sale under execution (or other process) when owned by the head of a family, or wife, who shall be a bona fide resident of the State, any of his or her real estate, not exceeding (one hun-

dred and sixty acres, if farming land, or one lot in town or city) in value one thousand dollars, at the date of such exemption, to be held and enjoyed by such party as a homestead.'' It would seem that this section was framed, with studied care, to avoid the construction that the land must, at the time the exemption should be claimed, be occupied as a homestead by the party, provided such party should then reside in the State.  There were excepted from its operation (Sec. 13) taxes, and ''any debt or liability contracted for on account of the purchase of said homestead, or improvements made upon the same;'' and (Sec. 10) ''any debts or liabilities contracted before the taking effect of this act.''  This was superseded by the law enacted in the General Statutes (1865), all the provisions of which affecting this controversy, have been continued ever since.  It changed the original act by requiring that the property exempted shall be used as a homestead.  It also includes all the exceptions to the operation of the exemption which it creates, in a single section (Sec. 7) which is the same as Sec. 6711, R. S. 1909, omitting only the words ''but when he holds title by descent or devise, from the time he becomes vested with the title thereto.''

Recapitulating these provisions in their application to this case, the Act of 1863 exempted every homestead held as such at the time of the exemption, except as against debts or liabilities contracted before the taking effect of the act.  The Legislature evidently thought that in this respect it covered the ground of their constitutional power.  In the Act of 1865 they evidently intended to change it so as to make the exception apply to all causes of action accruing before the acquisition of the land where it was acquired after the passage of the act, leaving the law unchanged as to lands acquired before its passage.  Every word used was necessary and appropriate for this purpose and no other.  This leads us to the conclusion that

the exemption of the homestead applies to all causes of action accruing after the filing of the deed by which the title is vested in the execution or attachment debt-or, even though the property may not have become a homestead until after the cause of action upon which the process is founded had accrued.

If we have devoted more discussion to this question than it apparently deserves, it is because we have not heretofore been entirely consistent upon the question. In Barton v. Walker, 165 Mo. 25, we evidently adopted a different view, while in both the earlier case of Finnegan v. Prindeville, 83 Mo. 517, and the later one of Sharp v. Stewart, 185 Mo. 518, it was distinctly held, following decisions in the State of Vermont, which is said to have furnished the model for our homestead law, that "the policy of the law is to secure housekeepers and heads of families homes which cannot be taken from them for debts contracted after the acquisition of the homestead. The acquisition of the land must be followed by its occupancy as a homestead, and this occupancy, whenever it occurs relates back to the time when the deed was filed for record." Our reasoning in the Barton case that the view we now take would, in case one has two tracts of land on one of which he resides, have the effect to give him two homesteads at the same time, overlooks the fact that the one only would be exempt on which he resides with his family at the time of the levy of the execution, and that the provisions we are now considering simply perform the purely legislative office of indicating the character of the liability to which the exemption of his one homestead shall apply.

II. It is suggested that the existence of the "cause of action," which resulted in the judgment under which the respondent is attempting to sell the real estate levied on, dates (1) from the time the promise of marriage was made; (2) from the date of its

breach by the appellant; and (3) from the date of the judgment. If the first contention is correct, it will result in the affirmance of the judgment; otherwise it will have to be reversed under our holding in the first paragraph of this opinion. The question is, therefore, did the cause of action, within the meaning of the homestead law, date from the time of the promise.

There is no expression in all our legal nomenclature that carries its meaning more conspicuously on its sleeve than does the phrase "cause of action." The words are unmistakable when we apply the meaning universally accorded to them, and the expression has no technical signification other than that they express. Bouvier, in his excellent dictionary, defines it as "matter for which an action may be brought;" and explains it by saying: "A cause of action does not accrue until the existence of such a state of things as will enable a person having the proper relations to the property or persons concerned, to bring an action." Quoting from the authorities, he says: "A cause of action is said to accrue to any person when that person first comes to a right to bring an action." If we desire further support for what seems a self-evident proposition we can find citations and quotations in abundance under that head in Words and Phrases. With that perspicacity which the courts sometimes display in the search for half hidden expressions of the legislative will, we have found in the homestead law (Secs. 3619, 3620, R. S. 1899), that the words "debt," "debts" and "debtor" are used in connection with those liabilities with respect to which the homestead is exempted, and have, accordingly, by construction, properly extended the operation of the expressions contained in Sec. 3622, R. S. 1899, already quoted, so as to include indebtedness arising out of money obligations not yet due. [Farra v. Quigly, 57 Mo. 284; Stivers v. Horne, 62 Mo. 473.] The word debt however has a meaning so well established that it cannot be

extended to include a promise of marriage while it remains in full force and unbroken. Bouvier in his definition of the word debt says: "The distinguishing and necessary feature is that a fixed and specific amount is owing and no future valuation is required to settle it." This court in Saleno v. Neosho, 127 Mo. 627, 639, said: "A debt is understood to be an unconditional promise to pay a fixed sum at some specific time, and is quite different from a contract to be performed in the future, depending upon a condition precedent which may never be performed, and which cannot ripen into a debt until performed." The books teem with learning on the subject, so easily available that its repetition here would be unjustifiable. We do however call attention to the discussion of the terms "cause of action" and "debt" in Patterson v. Patterson, 59 N. Y. 574, 578 et seq., as being peculiarly relevant to this case.

In Berry v. Ewing, 91 Mo. 395, this court seems to have used an expression inconsistent with our present conclusion respecting the meaning of the phrase "cause of action" in our homestead law. The case however was decided expressly and properly on the ground that the homestead claimed could not be constitutionally exempted from a money liability incurred by the execution of a curator's bond before the passage in 1863 of our first homestead law. The question we have discussed was again before this court in Loring v. Groomer, 142 Mo. 1, when we held that the covenants of a warranty deed do not, before breach, create a cause of action within the meaning of the very section we are now considering. We note that the Court of Appeals in its majority opinion disposes of the case just cited with the following remark: "The case of Loring v. Groomer, 142 Mo. 1, much relied on by the defendant, is not in point. Covenants of general warranty in a deed to real property run with the land and being in rem differ in the rules by which they are con-

trolled from obligations *in personam.*''    The court does not seem to have thought it worth while to explain the difference in this respect between the title to an obligation of this character obtained through a transfer by the effect that the law gives to a conveyance of the land, and a transfer by any other means appropriate to the nature of the liability.   Nor does it explain the peculiar sense in which it uses the word "*in rem,*" which we understand to be usually a technical term used to designate proceedings in an action against the thing, while the ordinary action for indebtedness upon a covenant is *in personam.*

The judgment of the DeKalb Circuit Court is reversed and the cause remanded to be proceeded with in accordance with this opinion.

PER CURIAM—The foregoing opinion of BROWN, C., is adopted as the opinion of the court.   All the judges concur.