JOHN A. PALMER, As Trustee in Bankruptcy of WILLIAM E. OMER, Appellant, v. WILLIAM E. OMER and JENNIE OMER.—295 S. W. 123.

Division One, April 11, 1927.

1. **HOMESTEAD: Abandonment: Acquirement of Another.** No head of a family can have two homesteads at the same time. By acquiring and occupying with his family a homestead in town he abandons his prior farm homestead, and has no homestead in the farm as against debts created during the time he occupies the homestead in town.

2. ———: ———: **Reoccupancy: Relation Back to Date of Deed: Intervening Creditors.** The head of a family having abandoned his farm homestead, by acquiring and occupying with his family another in town, and having sold the town homestead and with his family returned to the farm homestead, the farm homestead did not relate back to the date the deed conveying to him the farm was recorded, but the farm was subject to sale under execution for his debts created while he occupied the town homestead. The doctrine of relation cannot be applied to mean that the farm, from the date the deed by which it was acquired was recorded, is exempt from indebtedness incurred but not levied by attachment or execution during the period it was abandoned as a homestead.

3. ———: ———: ———: ———: ———: **Homestead Act.** The statute (Sec. 5860, R. S. 1919) declaring that "such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of acquiring such homestead, except as herein otherwise provided; and for this purpose such time shall be the date of filing in the proper office for the records of deeds, the deed of such homestead; . . . and such homestead shall not be subject to attachment or levy of execution upon any liability thereafter created," and the next section (Sec. 5861, R. S. 1919) declaring that "whenever such housekeeper or head of a family shall acquire another homestead in the manner provided by Section 5860, the prior homestead shall thereafter be liable to his debts," express a clear legislative intent that upon the abandonment of one homestead and the acquirement of another the first homestead becomes liable for debts created after it was abandoned; and a sale and abandonment of the second, and a removal by the housekeeper with his family back to the first, do not exempt the first, from the date that the deed by which it was acquired was recorded, from sale for debts created after it was first abandoned, although no levy of attachment or execution is made until after it was so reoccupied as a homestead.

---

Corpus Juris-Cyc. References: **Homesteads,** 29 C. J., Section 23, p. 790, n. 23; Section 84, p. 819, n. 20; Section 352, p. 937, n. 54; Section 367, p. 944, n. 40. **Statutes,** 36 Cyc., p. 1128, n. 55.

Appeal from Ralls Circuit Court.—*Hon. Charles T. Hays,* Judge.

REVERSED AND REMANDED (*with directions*).

*Eby & Hulse* and *Rendlen & White* for appellant.

(1)  Both ownership and occupancy are required to constitute a homestead, and no head of a family can have two homesteads at the

same time. When William E. Omer purchased 64 acres of land in February, 1910, placed his deed on record and went into possession and occupancy of said land, his homestead therein had been acquired and became completed. Thompson on Homestead and Exemptions, secs. 225, 245, 246; Freeman on Executions, sec. 248; Finnegan v. Prindeville, 83 Mo. 517; Bunn v. Lindsay, 95 Mo. 250; Kendall v. Powers, 96 Mo. 142; Peake v. Cameron, 102 Mo. 568; St. Louis Brewing Assn. v. Howard, 150 Mo. 445; Rouse v. Caton, 168 Mo. 288; Scheerer v. Scheerer, 229 S. W. 192. (2) A homestead, after it is acquired, may be abandoned by the owner thereof, and removal from the homestead, coupled with the acquisition of a new homestead, is conclusive proof of abandonment. 29 C. J. 944, sec. 367; Smith v. Bunn, 75 M. 559; Keas v. Gross, 92 Mo. 647; Duffey v. Willis, 99 Mo. 132; Rouse v. Caton, 168 Mo. 288. (3) After he abandoned his homestead in said land and long before he returned thereto in the spring of 1921 to reside thereon, he contracted the indebtedness in question. Under this state of facts the newly acquired homestead in said land upon his return thereto is not exempt from the payment of said indebtedness, and he did not own and was not entitled to claim a homestead in said land on June 15, 1921, which is exempt from the payment of said indebtedness. And if said William E. Omer did not own and was not entitled to claim a homestead in said land on June 15, 1921, exempt from the payment of said indebtedness, then it follows that defendant Jennie Omer, by the fraudulent deeds in question dated June 15, 1921, did not acquire any right, title or interest in or to said land. Smith v. Bunn, 75 Mo. 559; Keas v. Gross, 92 Mo. 647; Duffey v. Willis, 99 Mo. 132; New Madrid Banking Co. v. Brown, 165 Mo. 32; Rouse v. Caton, 168 Mo. 288.

*E. L. Alford* for respondent.

(1) The homestead, on June 15, 1921, was solidly bottomed on both ownership and occupancy—actual occupancy, as the housekeeper and head of a family on said date and for months prior thereto, and ownership, dating back to March 2, 1910, the date when his deed was filed for record. The homestead statutes are clear and plain, and need no special construction. Sec. 5853, R. S. 1919, defines the homestead, and plainly says that such homestead shall be exempt from levy under attachment and execution "except as herein provided." The single exception provided by statute is found in Section 5860, where it is provided that the homestead shall be subject to attachment and execution where the cause of action existed at the time of the acquiring of the homestead, and this section definitely fixes the time of the acquiring of the homestead to be the date of the filing in the proper office for the recording of deeds the deed to such homestead.

These provisions are so plain, explicit and clear as to leave no room for construction. Acreback v. Myer, 165 Mo. 685; Clark v. Thias, 173 Mo. 628, 651; Sperry v. Cook, 247 Mo. 132; Payne v. Fraley, 165 Mo. 191; Davis v. Land, 88 Mo. 436. (2) To place a homestead beyond the reach of a creditor, two things only are necessary: first, that the deed by which the land was acquired must be filed in the office of the recorder of deeds at a date earlier than the creation of the debt; and second, that at the time of levy by attachment or execution the homesteader must be the head of a family and residing on and occupying the land as his homestead. Sperry v. Cook, 247 Mo. 132; Clark v. Thias, 173 Mo. 628; Sharp v. Stewart, 185 Mo. 518; Finnegan v. Prindeville, 83 Mo. 517; Davis v. Land, 88 Mo. 436; Peake v. Cameron, 102 Mo. 568; St. Louis Brewing Assn. v. Howard, 150 Mo. 445. (3) When William E. Omer, in March, 1921, moved back and established his home on the land in question, the requirements of actual visible occupancy as a homestead was complied with, and his homestead right by virtue of the statutes and the decisions of this court immediately related back to the time when his deed to this land was placed of record, to-wit, March 2, 1910, and his homestead right was complete as against all debts by him created subsequent to March 2, 1910. In the interval between March 2, 1910, and March, 1921, when he resumed the occupancy of the land, no creditor had seized the land by attachment or execution. Omer and his family continued to occupy the land as a homestead down to and including the date, June 15, 1921, when he conveyed the land to his wife by the deed herein attacked. It made not the slightest difference that Omer had previously moved off the homestead and acquired another homestead. It was sufficient if he left his secondly acquired homestead and readopted his former homestead as his actual homestead in March, 1921, since in the meantime no judgments had been entered against him and become a lien on the first homestead, and no levy by attachment or execution had been made. Sec. 5860, R. S. 1919; Sperry v. Cook, 247 Mo. 132; Sharp v. Stewart, 185 Mo. 518, 530; Finnegan v. Prindeville, 83 Mo. 517; Beckmann v. Meyer, 75 Mo. 333; Davis v. Land, 88 Mo. 436. (4) The homestead statutes, because of the benevolent purposes sought to be accomplished by them, have been in all instances liberally construed by the courts in favor of the homesteader. The courts have never shown any solicitude for the creditor in the construction of these statutes. Sharp v. Stewart, 185 Mo. 518, 529; Payne v. Fraley, 165 Mo. 191; Clark v. Thias, 173 Mo. 650; Keeline v. Sealy, 257 Mo. 515.

ATWOOD, J.—This is a suit instituted by John A. Palmer as Trustee in Bankruptcy of William E. Omer against the said William E. Omer and his wife Jennie Omer for the purpose of setting aside,

cancelling and annulling a certain warranty deed executed on June 15, 1921, by the said William E. Omer and wife to George E. Elam, purporting to convey to the said Elam for the consideration of "$1.00 and other valuable considerations," 64 acres of land off of the west side of the Southwest Quarter of Section 17, in Township 55, Range 6, in Ralls County, Missouri; and for the further purpose of setting aside, cancelling and annulling a certain quit-claim deed executed on the same date by the said Elam to the said Jennie Omer, purporting to convey said real estate to her for the consideration of "$1.00 and other valuable considerations."

Plaintiff's petition charged that the deeds aforesaid were voluntary conveyances, without any valuable consideration, and executed for the fraudulent purpose, design and intent on the part of said William E. Omer and his wife Jennie Omer, of defrauding the creditors of the said William E. Omer, particularly the People's Bank of Center, Missouri, which bank was practically the only creditor of the said William E. Omer, who by said conveyance rendered himself insolvent, and said petition prayed that said deeds be cancelled and annulled and the title of said real estate divested out of Jennie Omer, and declared invested in plaintiff as trustee, as a part of the estate and assets of the said William E. Omer, bankrupt.

The said William E. Omer, although duly served with process, failed to answer or appear, and default judgment was rendered against him. The separate answer of defendant Jennie Omer, aside from formal allegations which were admitted, denied the allegations of said petition, and as an affirmative defense alleged that the said William E. Omer was, on said 15th day of June, 1921, the owner of and entitled to a homestead in said real estate, which homestead was exempt from the payment of said indebtedness owing to said People's Bank, and that by said warranty deed and said quit-claim deed such homestead was conveyed to her; that thereafter she owned and held the same free from the claims of said People's Bank on account of said indebtedness due it from the said William E. Omer, and that on July 27, 1922, she and her said husband executed a deed of trust on said land to secure an indebtedness of $2500 to the Hannibal Loan & Investment Co., which constitutes a valid lien, and no part of said indebtedness has been paid.

Plaintiff's reply denied that the said William E. Omer was, under the laws of Missouri, on said 15th day of June, 1921, the owner and entitled to a homestead in said real estate free and exempt from said claims of said People's Bank, and averred that the said William E. Omer abandoned his homestead in the 64 acres of land prior to the creation of his said indebtedness to said People's Bank, and acquired another homestead in said town of Center in and upon which

he resided with his family for about two years before moving back to said land in the spring of 1921.

The case was tried by the court without the aid of a jury and decision rendered finding all of the issues of law and fact for the plaintiff except as to the question of the homestead, on which feature of the case the court found that defendant, Jennie Omer, was the owner of and entitled to a homestead interest of the value of $1,500 in the land in controversy exempt from the payment of any portion of the indebtedness due from defendant William E. Omer to the People's Bank of Center, Missouri; and the court under its judgment and decree sustained the deeds in controversy and held the same valid as to the homestead interest owned by defendant Jennie Omer in said land, and set aside, cancelled and annulled said deeds as to the overplus, if any, in said land, over and above said homestead interest and the deed of trust against said land in the sum of $2,500 due the Hannibal Land & Investment Co. Plaintiff has perfected his appeal as against defendant Jennie Omer.

According to the admitted pleadings and evidence William E. Omer purchased said real estate on February 28, 1910, took title in himself by warranty deed, which was recorded in the office of the Recorder of Deeds within and for Ralls County, Missouri, March 2, 1910, immediately went into possession thereof and continued to occupy the same with his family, consisting of himself and his wife, as his homestead until the first of the year 1915, when, with his wife, he moved to Center, Missouri, about four miles distant from said land, where he went into the mercantile business, living in rented residence property. About the first of the year 1916 the said William E. Omer and wife removed from Center, returned to said 64 acres of land, and resided thereon until about the first of the year 1917, when he again moved to Center and there resided with his wife until the spring of 1921, again engaging in the mercantile business and later in the automobile business. On the occasion of this move to Center he lived with his family in rented residence property in Center until August 6, 1919, on which date he purchased a house and lot in said city of Center, taking title thereto in his own name, and immediately moved into and occupied said property as his residence and homestead where he continued to live with his family until the spring of 1921, when he again removed to said 64-acre farm to reside. Thereafter on July 7, 1921, he sold and conveyed his residence property in Center for a purported consideration of $2,300, a substantial part of which was applied on his debt hereinafter mentioned to the People's Bank of Center.

About December 1, 1917, after the said William E. Omer had begun to reside the second time in the city of Center, he began to borrow money from the People's Bank of Center and thereafter

continued to obtain money from said bank in various sums from time to time, executing his notes to said bank therefor. On June 15, 1921, the date of the execution of the farm deeds aforesaid, the said William E. Omer was indebted to said bank in the sum of $7,620, such indebtedness being represented by four promissory notes executed by him to said bank, one for $950 dated September 9, 1919, one for $1600 dated November 7, 1919, one for $3770 dated September 1, 1920, and one for $3850 dated April 13, 1920, on which last mentioned note there was due on June 15, 1921, a balance of $1300. On August 21, 1921, the said William E. Omer paid to said bank the full amount due on said note for $950, and thereafter on April 21, executed a new note to said bank for $5,730 covering and representing the aggregate amount then due on said note for $1600 and said note for $3770, and the interest due on said unpaid balance of $1300 on said note for $3850, which left the said William E. Omer owing said bank on said 21st day of April, 1922, said note of $5,730 and said unpaid balance of $1300 on said note for $3850. On the 25th day of August, 1922, the said William E. Omer filed his petition in voluntary bankruptcy in the United States District Court at Hannibal, Missouri, and on said date he was adjudged a bankrupt, and the aforesaid claims were presented by said People's Bank of Center against his estate and allowed.

It thus appears that the indebtedness here in question was created more than two years after William E. Omer moved for the second time from the farm to the town of Center, and during the time he and his family were occupying the newly acquired homestead in Center. No head of a family can have two homesteads at the same time. [29 C. J. 944; Stanley v. Baker, 75 Mo. 60, l. c. 62.] Therefore, while William E. Omer was then the sole owner of said farm property, neither he nor his wife had a homestead therein at the time this indebtedness was contracted.

Appellant insists that under this state of facts the homestead William E. Omer acquired in the farm property on his return thereto in the spring of 1921 was not exempt from the payment of said indebtedness, and that consequently defendant Jennie Omer did not on June 15, 1921, acquire any right, title or interest therein exempt from the payment of said indebtedness.

Respondent, on the other hand, contends that notwithstanding William E. Omer's abandonment of his original homestead in the farm, evidenced by his removal with his family therefrom to Center and his acquisition of another homestead there, when he reoccupied the farm in the spring, probably March, of 1921, he acquired a homestead therein which related back to March 2, 1910, the date when his deed to the farm was placed of record, so as to exempt the farm from any indebtedness incurred but not levied by attachment or execution dur-

ing the time the farm was abandoned as a homestead—and this because of certain language of the Homestead Act which we have italicized in the following copy of Section 5860, Revised Statutes 1919:

"*Such homestead shall be subject to attachment and levy of execution upon all causes of action existing at the time of the acquiring such homestead, except as herein otherwise provided; and for this purpose such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead,* when the party holds title under a deed, but when he holds title by descent or devise, from the time he becomes invested with the title thereto; and in case of existing estates, such homestead shall not be subject to attachment or levy of execution upon any liability hereafter created."

In Barton v. Walker, 165 Mo. 25, l. c. 30, Judge VALLIANT, speaking for Division One of this court, thus construed the clause in question:

"The clause was designed to prevent such a construction of the homestead statute as would give the one the benefit of the exemption before he filed his deed for record. The homestead law was conceived for the relief of the honest unfortunate debtor and this clause was inserted to guard as far as possible from its abuse for a dishonest purpose. The statute means that the homestead is not acquired until the deed is filed for record, but it does not mean that it may be acquired before the land is occupied as a home."

The above case has never been expressly overruled, but a different view from that suggested by the sentence last above quoted, and which if there adopted would have changed the result reached in the case, was stated and followed in the subsequent cases of Sharp v. Stewart, 185 Mo. 518, l. c. 531, and Sperry v. Cook, 247 Mo. 132, l. c. 138, citing Finnegan v. Prindeville, 83 Mo. 517, l. c. 521, an opinion apparently bottomed on Vermont decisions after the laws of which state our homestaed act was patterned, so that the construction above given in Barton v. Walker, however reasonable and just, should be taken as qualified by the following early construction given the same statute by Judge HENRY in Finnegan v. Prindeville, and thus subsequently approved:

"The policy of the law is to secure housekeepers and heads of families homes which cannot be taken from them for debts contracted after the acquisition of the homestead. The acquisition of the land must be followed by its occupancy as a homestead by the claimant, and this occupancy, whenever it occurs, relates back to the time when the deed was filed for record."

This liberal construction, springing out of tender regard for the honest unfortunate homesteader, on his actual occupancy thus protects him in the consummation of his aim, namely, the acquisition of the homestead, by imputing occupancy to him as of the date his

deed was recorded. The facts disclosed in the cases cited by respondent on this point well comport with this construction of the letter and spirit of the statute in such cases invoked. However, when the homesteader consummates his aim by the acquisition of a homestead and thereafter wholly abandons the same and takes up another, as in this case, we can think of no good reason why this extremely liberal construction should apply to extend him an unbroken period of exemption by a mere fiction of occupancy at a time when he not only was not in the occupancy of the land in question, but had voluntarily and unequivocally abandoned and repudiated the same as a homestead and was occupying and claiming other real estate, in which he had title of record, as his homestead. The latter part of Section 5861, Revised Statutes 1919, provides a way for the transfer of homestead from one tract of land to another without break in the right of exemption, but Omer disregarded this way and wholly abandoned his homestead in the farm. He cannot blow cold and hot on the question of homestead and by a subsequent reoccupation of the farm invoke the liberal construction of a fiction of law to the injury of those whom his attitude has misled into the extension of credit during the period of abandonment. Such an interpretation would extend the statute beyond the plain purpose of its enactment. We have never done this and decline to do it now. Furthermore, a clear legislative intent that upon the abandonment of one homestead and the acquisition of another the first homestead becomes liable for debts appears in the first clause of Section 5861, Revised Statutes 1919, reading: "Whenever such housekeeper or head of a family shall acquire another homestead in the manner provided by Section 5860, the prior homestead shall thereupon be liable for his debts," etc.

In her motion for a rehearing respondent asserts that "in *all* cases where a homestead exists the date of its acquirement is the date of the filing of the deed for record," and "that the fixing of the date of the acquiring of a homestead is a matter of statute already definitely exercised, and is not a matter of court ruling." The substance of the exception engrafted on Section 5853 by Section 5860 is that "such homestead shall be subject to attachment and levy of execution, upon all causes of action existing at the time of the acquiring such homestead, except as herein otherwise provided," etc. The subsequent clause, "and for this purpose such time shall be the date of the filing in the proper office for the records of deeds, the deed of such homestead," is not an independent exception or a contrary provision. It is a legal fiction in aid of the exception stated. Whether or not this fiction applies or may be invoked in a given state of facts is certainly a judicial question not to be ignored in this case. The several sections of the Homestead Act all relate to the same general subject, were enacted at the same time, should be read and construed together,

and when so read it seems clear that this clause upon which respondent relies can have no application in the instant case. If a homestead right be once abandoned and occupation thereof be again resumed, it reasonably follows that such resumption of occupation will only have the effect of giving origin to a new homestead right dating from the new occupancy and having no retroactive validity on the old right lost by abandonment and having no force against the rights of third persons acquired in the interim between the abandonment of the old and the commencement of the new occupancy. The doctrine applicable in this case is thus stated in Thompson on Homesteads and Exemptions, sec. 263-7, p. 217:

"So, when the homestead has been clearly abandoned by a permanent cessation of occupancy, and there is such an alienation as would suffice to transfer the title of general property, or debts are contracted which might be rendered a charge upon real estate never impressed with the homestead character, and the owner subsequently returns to, and occupies, the former homestead, though such occupancy would be sufficient to render the place exempt as against subsequent creditors, it could not affect transactions occurring between the time of abandonment and the resumption of occupancy."

The trial court erred in sustaining the deeds in controversy as against said indebtedness due from William E. Omer to the People's Bank of Center, Missouri, and the judgment is reversed and the cause remanded with direction that the trial court enter judgment not inconsistent herewith. All concur.