W. H. DENT and CELIA DENT, Appellants, v. JOHN DENT, BONNIE B. DENT, DONALD J. LAMPSON, and F. L. RIEFESEL.—No. 38138.— 166 S. W. (2d) 582.

Division One, November 10, 1942.

As Modified on Denial of Rehearing, December 15, 1942.

*May & May* for appellants.

*Roy Hamlin, F. D. Wilkins* and *W. H. Juett* for respondents.

 BRADLEY, C.—Action to set aside two deeds to about 100 acres of land in Pike County, and to cancel a deed of trust on the land and to determine title. The cause was filed in Pike County, but went on change of venue to the Hannibal Court of Common Pleas, where the finding and judgment went against plaintiffs and in favor of defendants in plaintiffs' cause to set aside and to cancel. And the court found that defendants John and Bonnie B. Dent were the owners of "a life estate in the real estate'" involved, and that these defendants had a homestead in said land. Also, the court found for the defendants John and Bonnie B. Dent on a cross complaint whereby a money judgment was asked against plaintiffs. Plaintiffs appealed.

Respondents, defendants below, have filed motion to dismiss the appeal because of alleged failure to comply with our rules 11, 12 and 13, pertaining to the preparation, etc., of abstracts. Also, it is claimed that the brief of appellants does not comply with paragraph 2 of rule 15, pertaining to statement in numerical order of points relied on, etc. The motion was taken with the case. The abstract and brief may not be worthy of recommendation as a model, but we do not think they are such as to justify dismissal of an appeal. The motion to dismiss is overruled.

Plaintiffs are husband and wife and reside at Burlington, Iowa, and defendants John and Bonnie B. Dent are husband and wife and reside in Pike County, Missouri. Defendant Donald J. Lampson is a son of Bonnie B. Dent by a former marriage, and defendant Riefesel is the beneficiary in the deed of trust involved. Plaintiff W. H. Dent and defendant John Dent are cousins.

July 28, 1931, for borrowed money, defendant John Dent gave his note, dated at Burlington, Iowa, for $200.00, to plaintiff Celia Dent. The note was due "on or before one year after date." August 31, 1931, for borrowed money, defendant John Dent gave his note, dated at Louisiana, Missouri, and for $200.00, to plaintiff W. H. Dent. This note was due "one year after date", and was secured by a chattel mortgage on houshold furniture, rugs, etc. January 1, 1933, defendant John Dent gave his note for $475.00, due one year after

date, to plaintiffs W. H. and Celia Dent. Plaintiffs say that the consideration for the $475.00 note was the balance due on the two $200 notes, and was a renewal of both those notes. Defendant John Dent says that the $475.00 note was for additional borrowed money and had no connection with and was not a renewal of the two $200 notes. We might say that defendants John and Bonnie B. Dent were married subsequent, as we understand, to the execution of these notes.

July 9, 1932, and prior, the land in question was owned by Rebecca M. Fleece, mother of defendant John Dent. On the date mentioned, Mrs. Fleece and her husband, James G. Fleece, by "deed of gift" conveyed the land to defendant John Dent "for and during his natural" life, remainder in fee to Carl E. Dent and Ruth Dent, children of defendant John Dent, "subject only to the life estate herein reserved in favor of" the grantors. Rebecca M. Fleece died April 2, 1937, and her husband, James G. Fleece, and stepfather of defendant John Dent, died October 24, 1938. Thereafter, defendant John Dent and his present wife occupied the land as a homestead.

April 3, 1939, defendant John Dent, by quitclaim and in consideration of "one dollars and other valuable consideration", conveyed an "undivided one half interest" in the land involved to defendant Donald J. Lampson. And on same day, Lampson, by quitclaim and in consideration of "one dollar and other valuable considerations" conveyed the interest he received to defendant Bonnie B. Dent, his mother. April 14, 1939, the defendant Dents executed the deed of trust on the land to defendant Riefesel to secure their note for $260 dated April 14, 1939, and due "on or before one year after date."

October 9, 1939, plaintiffs obtained judgment against defendant John Dent in the sum of $648.21, in the Pike County circuit court, on the $475.00 note. Execution was issued and the land involved here was levied upon and advertised for sale under the execution. Prior to the date of sale, defendant John Dent filed a voluntary petition in bankruptcy and the sale was not had. In the bankruptcy court defendant John Dent claimed the land as a homestead and the referee found "that the value of the interest of the bankrupt in the real estate in which bankrupt claims homestead" was less than $1500, and that at the time of filing the petition in bankruptcy the land was occupied by John Dent and family as a homestead, and it was ordered that the bankrupt "take and hold as his homestead exemption his life estate" in the land.

On February 15, 1940, on petition of plaintiffs in the present case, to be permitted to proceed on any remedy they might have in the circuit court, the referee in bankruptcy ordered "they (plaintiffs here) be authorized to proceed with any remedy that they may have on their cause of action or judgment in the circuit court of Pike County, Missouri, against" the land involved here, "without prejudice from the adjudication of bankruptcy."

After plaintiffs were remanded to the circuit court for whatever remedy they had on their judgment against defendant John Dent, and on April 11, 1940, execution was again issued on the judgment. Under this execution the land involved was levied upon, advertised for sale, and on May 7, 1940, was sold at public sale to plaintiffs on a bid of $500. On the same day the sheriff executed and delivered his deed, and on the next day, May 8, 1940, this cause was filed.

We might here advert to the answers. Originally, plaintiffs' petition was in two counts. Count one was to determine title and count two was in ejectment. Plaintiffs dismissed the ejectment count and filed an amended petition, the one upon which the cause was tried, asking that the quitclaim deeds respectively to defendants Lampson and Bonnie B Dent, supra, be set aside, and that the deed of trust to defendant Riefesel be cancelled as above stated. Also, the amended petition asked determination of title.

Defendants Lampson and Bonnie B. Dent answered separately by a general denial. Prior to the filing of the cause, defendant Riefesel had endorsed his note to defendant Lampson, and for his separate answer filed a disclaimer of interest in the land.

Defendant John Dent, in his separate answer, denied generally, claimed that the ▆▆▆▆ land was his homestead and was not, therefore, subject to sale under the execution. He pleaded also the order of the bankruptcy court finding that the land was his homestead, as being res adjudicata on the question of homestead.

In the cross complaint for a money judgment against plaintiffs, defendant John Dent alleges that plaintiffs, through their agent, Cletus Love, in 1940, "did with force and arms, maliciously, wrongfully and unlawfully enter" upon the land involved and take therefrom 3000 bushels of corn of the value of 75 cents per bushel, and pastures, etc. of the value of $500. That in 1941 (trial commenced September 29, 1941) plaintiffs, through their agent, Love, have 4000 bushels of corn "in their possession and under their control raised on the farm, of the value of 75 cents per bushels," and also some 15 acres of soy beans, being about 500 bushels of the value of $2 per bushel, together with all the pasture lands and other land subject to cultivation upon said farm of the value of $500 for the year 1941."

"Defendant John Dent further states that these plaintiffs have taken all of the rents and profits for the years 1940 and 1941 off of these lands in the total sum of $7250.00, as pleaded herein, and further, that these plaintiffs have, with great force and violence, by and through their agent, servant and representative, Cletus Love, driven the defendant John Dent and his wife from said lands to his damage in the sum of $5000.00.

"Defendant John Dent further states and shows to the court that because of said acts being malicious, unlawful, wilful and with force and violence that he is entitled to punitive damages as well as actual damages.

"Wherefore, for the matters and things pleaded hereinabove, John Dent prays judgment in the sum of $7250.00 actual damages, and for $5000 punitive damages, being a total of $12,250.00, and for his costs." For reply plaintiffs, as to each separate answer, denied generally.

The trial court made a finding of facts, not binding, of course, in an equity case, and among the findings, found that defendant John Dent "on or before April 3, 1933", paid the two $200 notes, and that the $475 note upon which plaintiffs' judgment was based "was not a renewal" of the two $200 notes. The deed from defendant John Dent's mother, dated July 9, 1932, conveying to him a life estate in the land was filed for record July 11, 1932, and the court found that at that time defendant John Dent "did not owe" the $475.00 note and that the land was a homestead and not subject to sale under plaintiffs' execution. The judgment cancelled the sheriff's deed to plaintiffs. Also, the judgment recited:

"That the defendants John Dent and Bonnie B. Dent have and recover of the plaintiffs W. H. Dent and Celia Dent, their damages herein in the sum of $10, and it is further ordered and adjudged that said defendants have and recover of said plaintiffs the sum of $2100.00, being the value of the crops grown upon said land for the year 1941, together with interest thereon at the rate of six per cent per annum until paid, and that said defendants have and recover of said plaintiffs the sum of $50.00 per month from the date hereof, same being the monthly rental value of said real estate, until the possession of said real estate is restored by the plaintiffs to the defendants and that said defendant further have their costs herein expended."

It is contended that, under the evidence, the judgment "should have been in favor of the plaintiffs" and that "the court was without jurisdiction, under the pleadings, to determine matters of crops grown on said real estate for 1941, and for damages for withholding possession and for monthly rental."

As appears, supra, the $475 note upon which plaintiffs' judgment was based was executed January 1, 1933, and the deed from defendant John Dent's mother to him was executed July 9, 1932, and filed for record July 11, 1932. The two $200 notes, as appears, were executed respectively on July 28, 1931, and August 31, 1931. If the $475 note was a renewal of the two $200 notes, then the *debt* was contracted before the homestead was acquired, and in such case the homestead was subject to sale under the execution. On the other hand, if the $475 note was not a renewal of the two $200 notes, but was a *new* debt, then it was a debt made *subsequent* to the acquiring of the homestead and the homestead was not subject to sale under the execution. Sperry v. Cook, 247 Mo. 132, 152 S. W. 318; Palmer v. Omer et al., 316 Mo. 1188, 295 S. W. 123.

It will be noted that while the land claimed as a homestead was *acquired* before the execution of the $475 note, it was not

*occupied* as such until. after the execution of said note. However, such fact does not affect the right of homestead.

It is held in the Sperry case, supra [247 Mo. 132, headnote 1] that "the exemption of the homestead statutes applies to all causes of action accruing after the filing of the deed by which the title is vested in the execution or attachment debtor, even though the property may not have become a homestead until after the cause of action upon which the process is founded had accrued." See also Palmer v. Omer, 316 Mo. 1188, l. c. 1194, 295 S. W. 123, l. c. 125.

In the bankruptcy proceeding defendant John Dent testified that the $475 note was a renewal of the two $200 notes, and a transcript of that evidence was in evidence in the present case. However, in the present case, he testified that the $475 note was not a renewal of the two $200 notes, but was a new and different obligation. He made no denial as to what his evidence was on the bankruptcy hearing, but said, in effect, that after he got home and checked his records, he found that he was mistaken. There were other facts and circumstances in evidence tending to support plaintiffs' contention that the $475 note was a renewal as claimed, and there were other facts and circumstances tending to support defendant John Dent that such note was not a renewal as claimed. It will not be necessary to set out all the evidence on such question. In an equity case we are not bound by the finding of the trial court, but we should and do give great weight to the trial court's finding. Selle v. Selle et al., 337 Mo. 1234, 88 S. W. (2d) 877, l. c. 880.

Plaintiffs say, however, that John Dent's evidence in the bankruptcy proceeding was, in effect, *a judicial admission* that the $475 note was a renewal of the two $200 notes, and that such evidence was forever binding. See Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S. W. 177. The Steele case came up on a second appeal and was in banc. After a consideration of the law, the court said [257 S. W. l. c. 759]:

"It is thus apparent that the court en banc is committed to the proposition that upon a subsequent trial the plaintiff is not absolutely bound by his testimony at a former trial; that the jury has the right to consider his testimony given at the subsequent trial, notwithstanding it is shown that his testimony at the former trial tended to show the existence of a contrary state of facts."

In Edmonston v. Kansas City (Mo. App.), 139 S. W. (2d) 1073, the two Steele opinions were considered, and this was said [139 S. W. (2d) l. c. 1076, 1077]:

"In this latter opinion, there was no attempt made to distinguish these two cases on principle. The ruling on the first appeal to the effect that conflicting testimony given by a litigant on a vital point at a given trial of a case is fatal to his right of recovery, and the rule announced on the second appeal that if this conflicting testimony

occurs at two different trials, it is merely a matter of credibility for the jury to pass upon, present, so it seems to us, an arbitrary distinction that cannot be sustained on any basis of sound logic. It seems clear to us that, on principle, these two decisions are in fundamental conflict. If Division 2, in the first Steele case appeal, was correct in assigning as a reason for the rule which it there announced that courts 'ought not to be used as hotbeds for the germination and promotion of perjury', it would seem that this same reason would support with equal force the same rule as to conflicting testimony of a party given at two different trials of the same case *where there is no explanation of the conflict*. If, on the other hand, the rule announced in the second Steele case appeal, to the effect that conflicting testimony of a litigant occurring at different trials merely presents a matter of credibility for the determination of the jury, is a sound rule under those circumstances, how can it reasonably be said that, thus limited, it should not apply where the conflict occurs in the same case? Notwithstanding our views on this matter, however, these two decisions are controlling here and we are, of course, bound thereby'' (italics ours).

But if it be that the reasoning in the second opinion in the Steele case is unsound, upon which we express no opinion, such would not aid plaintiffs in the present case because, as pointed out, supra, defendant John Dent, in effect, gave a reasonable explanation for the conflict in his evidence in the bankruptcy proceedings and in the present case.

█ There is nothing here that would justify the overturning of the trial court's finding on the question of consideration for █ the $475 note or on the question of ownership and homestead, and the judgment, except on the cross complaint, is affirmed.

█ Was the trial court without jurisdiction, under the pleadings, "to determine matters of crops", etc., as claimed by plaintiffs? The trial court, on the cross complaint, rendered a money judgment against plaintiffs and in favor of defendants John and Bonnie B. Dent for $10 damages, and for $2100 for the value of the crops grown on the land in 1941, plus 6% interest thereon; and "$50 per month . . . same being the monthly rental of said real estate, until the possession of said real estate is restored" to defendants Dent. Recovery for the 1940 crops was denied because these had "long been severed."

Originally, plaintiffs' petition was in two counts. The first count was to set aside the quitclaim deeds, cancel the deed of trust, and determine title, as was the amended petition upon which the cause was tried. The second count of the original petition was in ejectment. Defendant John Dent filed an answer to plaintiffs' original petition, which answer contained what is termed a counterclaim for $5000 damages alleged to have been sustained because of the sale of the homestead. No particular item of damage was named. Thereafter, plain-

tiff amended count one and dismissed the count in ejectment, and defendant John Dent amended his separate answer and included therein the cross complaint at law. There was no formal order dismissing his counterclaim set up in his original answer, but such was abandoned.

There is some confusion in the record. It is stated at the beginning of the abstract of the record that the cause was filed May 8, 1940, as we state, supra, but it is recited in the judgment that the cause was filed August 21, 1941. May 8, 1940, is probably the correct date. The record shows that the trial was commenced September 29, 1941, concluded October 1, 1941, and then taken under advisement and judgment rendered January 7, 1942. As appears, supra, the trial court found that recovery could not be had on the cross complaint for the 1940 crops because these crops were severed. It does not appear when the cross complaint was filed. However, the allegations of the cross complaint would suggest that the 1941 crops were on the place and unsevered when the complaint was filed. The trial court found that "the corn and soy beans grown during 1941 upon said real estate were not harvested prior to the trial", but did not find that the 1941 crops were unsevered at the time of the judgment. The defendants Dent, however, say that the 1941 crops were not severed at the time of the judgment, but there is no substantial evidence to support such contention. That question, however, under the facts, is not important, as will be seen, infra, since defendants Dent do not claim that the 1941 crops were abandoned, or the possession of the land was restored to them before these crops were severed.

As appears, supra, plaintiffs got their sheriff's deed May 7, 1940, and filed suit to set aside deeds and determine title on May 8, 1940. And it appears from the record that Cletus Love had, before their death, rented the land from the Fleeces, defendant John Dent's mother and stepfather, and John Dent testified that Love was in possession when he (John Dent) "came into possession." Defendant John Dent further testified that Love, in the spring of 1940, while he (Dent) was plowing the land, told him to "get off" and "held them (John's horses) by the bits to keep them from going on. I told him I was going to plow the ground and he said, 'You can't with me holding the horses by the bits.' . . . Q. What happened then? A. Well, I returned my team to the barn and waited a few days, and in the meantime he went in there with a tractor." The record shows that Love cultivated the land both in 1940 and 1941, and we infer, became the tenant of plaintiffs after they got their sheriff's deed.

The subject of the right of the owner of land, out of possession, to recover crops grown thereon is considered at length in Betchler et ux. v. Bittick et al. (Mo. App.), 121 S. W. (2d) 188, and after reviewing a number of cases, the law is stated thus [121 S. W. (2d) l. c. 191-2]:

"It thus appears to be the law that where one in possession of land, even as a mere trespasser, plants, cultivates, and brings to maturity a crop, and severs it from the soil, he thereby becomes the owner of the crop; but if he abandons the possession of the land, or is dispossessed under a writ of restitution issued on a judgment in ejectment, before the crop is matured and severed ▆▆▆ from the soil, it then becomes the property of the owner of the land. . . . This view we think arrives at substantial justice. For the wrongful withholding of their land, plaintiffs (in the present case the defendants Dent) have their remedy. They are entitled to damages which may be recovered in an ejectment suit for the possession of the land, but as said in Jenkins v. McCoy, supra [50 Mo. 348], the value of the crop grown on the land is not the measure of their damages. The owner of land does not get the crop grown on the land as damages for the wrongful withholding of the land, but he gets the crop because it is his. It is his not because he is entitled to it by way of damages for the wrongful withholding of his land, but because it was grown on his land and was not matured and severed from the soil before he obtained possession through abandonment or a writ of restitution. The damages to which he is entitled for the wrongful withholding of the land are the same whether a crop was grown on the land or it was permitted to lie idle. If a crop is grown on the land its value may far exceed the rental value of the land, or the damages to which the owner is entitled. But in such case, if the owner, by so timing his ejectment suit, obtains possession of the land through a writ of restitution before the crop is matured and severed from the soil, he thereby gets title to the entire crop and thus gets not only the fruit of the soil which is his, but also the fruit of the labor of him who grows the crop. These reflections lead inevitably to the conclusion that the courts ought not strive to hunt out a way to make it easy for the owner to so appropriate the fruit of another's labor. To entitle the owner to the crop he should be held to a strict showing of what the law requires to accomplish that end, that is, that he obtained possession of the land, through abandonment or a writ of restitution, before the crop was matured and severed from the soil."

It could serve no good purpose to repeat here a review of the cases reviewed in the Betchler case. Under the facts here defendants Dent were not entitled to recover the *value* of the crops. All they are entitled to recover is the rental value for such period as they have been wrongfully deprived of possession.

The law, as written in the Betchler case, gives "substantial justice" to the landowner, so it is stated in that case. The purpose, of course, of all rules of law is to bring about substantial justice. We have affirmed the judgment of the trial court that defendants Dent were the owners of a life estate in the land and a homestead therein when plaintiffs took over, and if substantial justice prevails defendants Dent

should be paid the reasonable rental value for such period as they have been deprived of possession. And in the interest of justice [Ducoulombier v. Thompson, 343 Mo. 991, 124 S. W. (2d) 1105, l. c. 1109 and cases cited; Koerper et al. v. Glennon, 209 Mo. App. 489, 240 S. W. 260; Hake v. Buck's Stove & Range Co. (Mo. App.), 234 S. W. 1061; Gibbs v. General Motors Corp. et al., 350 Mo. 431, 166 S. W. (2d) 575], the judgment on the cross complaint should be reversed and the cause, on the cross complaint only [State v. Weatherby, 344 Mo. 848, 129 S. W. (2d) 887; Leeper v. Kurth et al., 349 Mo. 939, 163 S. W. (2d) 1031] be remanded with directions to permit the defendants Dent to amend the cross complaint so as to permit recovery for the reasonable rental value for the period of plaintiffs' possession, and with the further direction to the trial court to determine that value as in any other cause at law. It is so ordered.

*Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur except HAYS, J., absent.